(34 South. 63.)

No. 14,331.

E. B. WILLIAMS & CO. v. BIENVENUE et al.*

(Feb. 2, 1903.)

SALE—FAILURE TO DELIVER—DAMAGES.

1. When there has been a violation of a contract to deliver lumber of specified grades and stipulated quantity within a time named, the party to whom the delivery was to be made is entitled to recover the amount of the losses he has sustained and the profits of which he has been deprived.

(Syllabus by the Court.)

Appeal from Judicial District Court, Parish of Pointe Coupée; L. B. Claiborne, Judge.

Action by E. B. Williams & Co. against Susie S. Bienvenue and husband. Judgment for defendants, and plaintiffs appeal. Modified.

Albin Provosty (Pierson & Pierson, of counsel), for appellants. Yoist & Hewes, for appellees.

BLANCHARD, J. Defendant, a married woman, separate in property from her hus-

*Rehearing denied March 30, 1903.

band, owned a saw mill, which she operated. through the agency of her husband. This mill was in the Parish of Point Coupée.

Plaintiffs were wholesale and retail dealers in lumber, buying and selling same under contract and exporting lumber abroad. Their place of business was the City of New Orleans.

On the 31st of May, 1899, these parties entered into a contract, under the terms of which defendant was to sell and deliver, at her cost, at a landing or place of shipment on the Mississippi river, her mill's entire output of cypress lumber.

· She engaged that this output would not be less than seventy-five thousand feet per month.

The term of the contract was twelve months, so that the obligation undertaken by the defendant was the delivery of nine hundred thousand feet of lumber, all told, in installments of not less than seventy-five thousand feet per month.

The grades of lumber stipulated for were based upon the grading of the Southern Cypress Lumber Association, a copy of which was attached to and made part of the contract.

The kinds of lumber the contract called for were:—

First and second grade..constituting one classification.
Selects....................." another "
Cross-ties................." the third "

The weight of the first and second grade and that of the select grade was not to exceed three pounds per foot, board measure. The cross-ties could be green.

Plaintiffs were to pay for one inch lumber of the first and second grade $18.00 per M. feet B. M.; for inch and a quarter and inch and a half lumber of the first and second grade, $19.00 per M. feet; for two inch, two and a half and three inch lumber of the first and second grade $20.00 per M. feet.

They were to pay for inch lumber of the "select" grade $12.00 per M. feet; for inch and a quarter and inch and a half lumber of the same grade $13.00 per M. feet; for two inch, two and a half inch and three inch lumber of the same grade $14.00 per M. feet.

For cross-ties they were to pay $9.00 per M. feet, B. M.

Payments made in pursuance of the con-

tract were to be subject to a cash discount of two per cent.

The purchasers (plaintiffs) were to send an inspector to inspect the lumber whenever fifty thousand feet or more of lumber of either of the grades should be at the river landing ready for delivery.

Not less than forty per cent. of all the lumber engaged was to classify as first and second grade.

Not more than thirty per cent. was to class as "select" grade.

This left thirty per cent. of the lumber to class as cross-ties.

On June 12th following, the contract was modified by an agreement on part of plaintiffs to receive the lumber at any landing on Old river (a tributary at that point of the Mississippi river) whenever the stage of water in Old river permitted boats and barges to navigate that stream. Otherwise the delivery was to be made on the banks of the Mississippi river.

At the same time the contract was further modified in this respect, viz.—

Williams & Co. agreed to waive the percentages of lumber to be furnished as set forth in the original contract to the extent of ten per cent., to be divided equally among the three grades named, to-wit:—First and Second, Select and Cross-ties.

A further modification took place later, the purport of which was that the obligation of Williams & Co. to send an inspector to inspect the lumber whenever fifty thousand feet or more should be at the landing ready for delivery, was eliminated from the contract, and, in lieu thereof, defendant agreed to deliver the lumber under the contract on the batture at Williamsport, a landing on Old river, and were to construct a ramp there and other necessary appliances for placing the lumber, and were to pile the lumber on the batture as directed by the plaintiffs.

And the lumber so piled was to be taken up every thirty days by the plaintiffs, who were to advance fifty per cent. of the contract price on same—the remainder to be paid when the lumber was shipped out. Williams & Co. were to have a representative in the locality of the mill who was to direct the piling and classing of the lumber. This delivery of lumber at Williamsport as above, instead of at Smithland on the Mississippi

river, a few miles away, was to continue only so long as the stage of water in Old river permitted the shipment of lumber by barge from that stream.

A further modification is claimed by plaintiffs in this, to-wit:—that defendant was to provide and deliver shop grade of lumber at an agreed price of ten dollars per M. feet, instead of cross-ties at $9.00 per M. feet—this modification taking place after delivery of a considerable quantity of cross-ties had been made and accepted, and the shop grade of lumber to be in lieu of further delivery of cross-ties.

Defendant disputes entirely the modification thus claimed as to substitution of shop grade lumber for cross-ties.

Over the execution of the contract as made and modified, trouble arose between the parties, resulting in this litigation.

The contention of plaintiffs is that they, themselves, complied fully with their obligations under the contract, but that defendant did not, and her violations of the same have caused them damages, which they figure, all told, at the sum of $3,393.93.

Their complaint against the defendant is that she failed to furnish the quantity of lumber called for by the contract; that she was put in default in respect to same; that she delivered only 565,759 feet of lumber instead of 900,000 feet; that by her failure in this regard she caused plaintiffs a loss in profits of $3,125.04; that in loading one of the barges she furnished lumber not of the grade called for by the contract and short in quantity, causing plaintiffs a loss under this head of $203.00; and that on another occasion she failed to supply the quantity of lumber requisite to load a barge, which was at the landing under a contract limited as to time with the owners, by which plaintiffs agreed to pay freight for the use of the barge on 220,000 feet of lumber at $3.50 per M. feet, whether that much lumber was actually loaded on the barge or not, and that in this way plaintiffs suffered a loss of $65.89.

Defendant pleaded the general issue; specially denied any default on her part in the matter of the execution of the contract; and claimed in reconvention against plaintiffs $300.37 as per itemized statement annexed to her answer.

There was judgment for plaintiffs for $520.-

85, with interest, on the main demand, and for defendant, on her reconventional demand, for $222.83, with interest.

Plaintiffs appeal and in this Court defendant asks amendment of the judgment rejecting in toto plaintiffs' demands.

Ruling—The issue is one of fact.

The evidence sustains plaintiffs' contentions in the main.

The defendant did not live up to her contract, even from its very inception.

She (her husband acting for her) evinced no proper appreciation of the obligations she had assumed, nor of the legal effect of the agreement she had entered into.

She deliberately included in the agreement made with plaintiffs fifty thousand feet of a desirable grade of seasoned lumber, represented at the time to be already sawed and at the mill, which was to be delivered to plaintiffs as part of the 900,000 feet of·lumber contracted for, and yet she sold and delivered this lumber, or the most of it, to another party.

Her contract with plaintiffs went into effect from and after May 31st, 1899, and under it she bound herself to deliver the output of her mill, which was not to be less than 75,000 feet per any one month during the term of one year, and yet the first delivery of any sort was not made until August 31st, three months from the date of the contract, and she then delivered only cross-ties, the lowest and most undesirable grade of lumber included in the contract, and even then only 30,464 feet of that grade of lumber was delivered.

Although in the contract she made no mention of a reservation for other contracts previously entered into with other parties, and did include in the contract entered into with plaintiffs the entire output of the mill, we find in a letter written by her husband to plaintiffs on the 24th of June, the statement: "I have just commenced sawing on our contract. Owing to having some ash timber to saw up under contract previous to yours, I could not commence sooner." And we find, further, that whatever cypress lumber was sawed about that time was not delivered to plaintiffs, for one of the members of plaintiffs' firm (Coleman) went, in the latter part of July, up to the mill to see why defendant was not furnishing lumber under the contract and found no lumber there suitable to go on the contract, except cross-ties.

Though the contract called for the delivery of 75,000 feet per month, plaintiffs were not able to get under it a single plank before Sept. 25, 1899, nearly four months after the date of the contract.

The letters of defendant to plaintiffs, forming the initiation of the contract and leading up to the same, contain the statement that the timber from which the lumber was to be manufactured had been undercut (deadened) for 18 months, the sap was out of it and the lumber cut from it would be almost dry and free from sap edges, worm holes, etc., and the contract itself stipulated that the lumber was not to weigh over three pounds to the foot, board measure, which meant dry or seasoned lumber, and yet the only lumber plaintiffs were ever able to obtain was green and not such as was in contemplation when the contract was made, but which plaintiffs were compelled to take in order to fill, as best they could, their engagements based upon the contract.

Although the contract stipulated the percentage of the higher grades to be delivered under it (afterwards changed in her interest), these conditions were not complied with, and throughout the entire term of the contract delays and failures of fulfillment were the rule.

We find that the aggregate totals of lumber delivered were 565,760 feet as against 900,000 feet defendant contracted to deliver.

Of the 565,760 feet delivered, we find that 218,734 feet were of the classification known as first and second grade; 144,958 feet were of the classification known as "select" grade; 114,740 feet were of what is called "shop" grade; and 87,328 feet were of the cross-tie grade.

The total shortage in deliveries was 334,240 feet.

The apportionment of the deliveries, as fixed in the contract, for the different grades, was 40 per cent. for the first classification, 30 per cent. for the second, and 30 per cent. for the third.

This was, by a subsequent modification of the contract, reduced 10 per cent. to be divided equally among the three grades.

On this basis of calculation 348,000 feet of lumber of the first classification (first and second grade) should have been delivered, and 261,000 feet of the second classification (selects) should have been delivered. This left a shortage in the first classification of 129,266 feet and a shortage in the second classification of 116,042 feet.

The aggregate of shortage in these two classifications is 245,308 feet and this deducted from the total shortage on the contract, to-wit:—334,240 feet, leaves a balance of 88,932 feet which stands for the shortage in the third classification of lumber under the contract as modified.

We find the preponderance of the testimony to sustain plaintiffs' contention that the cross-ties were eliminated from the contract in November, 1899, and "shop" grade of lumber at $10.00 per M. substituted in their place, and thereafter the only cross-ties received were some that had been gotten out before the modified agreement was made.

We find that plaintiffs did not default in any material respect in the obligations they assumed under the contract, especially in view of the conditions which defendant, herself, had brought about, and that the fault for the trouble which arose in the execution of the contract lies at the door of the defendant, who was again and again put in default by plaintiffs in respect to the obligations she had assumed under the contract.

Plaintiffs are entitled to recover the amount of the losses they have sustained and the profits of which they have been deprived. Rev. Civ. Code, art. 1934.

The lumber was intended for the St. Louis market. First and second grades were worth there at the time $33.00 per M. feet; selects $29.00 per M. feet; "shop" grade $24.50 per M. feet.

The contract prices of these grades were, respectively, $19.00, $13.00 and $10.00 per M. feet.

To these prices must be added the cost of transportation, handling, selling, etc., in St. Louis, which, to be on the safe side, we will put at $7.00 per M. feet.

On this basis we figure out plaintiffs' losses on 1st and 2nds at $904.86; on "selects" at $1,044.37; on "shops" at $666.99.

Total loss of profits $2,616.22.

The item for $65.89 in plaintiffs' original petition and that for $203.90 in their supplemental petition are disallowed.

Of the items going to make up defendant's demand in reconvention of $300.37, the first, fourth and sixth, aggregating $90.64, are allowed.

For the reasons assigned it is ordered and decreed that the judgment appealed from be amended by increasing the amount allowed plaintiffs from five hundred and twenty & 85/100 dollars to two thousand, six hundred and sixteen & 22/100 dollars, with legal interest thereon from the 16th of November, 1900, until paid, and by decreasing the amount allowed defendant on her demand in reconvention from two hundred and twenty-two & 83/100 dollars to ninety & 64/100 dollars, with legal interest thereon from the 5th of December, 1900, and that as thus amended the said judgment be affirmed—costs of the main action in the court below and all costs of the appeal to be borne by defendant; those of the reconvential demand in the court below to be borne by plaintiffs.

PROVOSTY, J., recused.