See dissenting opinion of BREAUX, C. J., 53 South. 600.

---

(53 South. 646.)

No. 17,272.

HAFNER MFG. CO. v. LIEBER LUMBER & SHINGLE CO. et al.

(Dec. 13, 1909. On Rehearing, Nov. 14, 1910.)

*(Syllabus by Editorial Staff.)*

1. SALES (§ 418*) — BREACH OF CONTRACT — DAMAGES.

    A buyer claiming as damages for the seller's failure to deliver goods bought the difference

between the price fixed in the contract and the market price of the same kind of goods on the last day of the term fixed in the contract for delivery thereof, is not limited to the difference between the profits he would have made by the resale of the goods purchased from the seller under the contract and the profits he made on a resale after purchasing the goods at an advanced price, merely because he alleges that he had contracted with third persons to sell them the goods, and that this fact was known to the seller at the time of the contract of sale, where it is not alleged that the contract sued on was made with reference to such other contracts.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

2. SALES (§ 152*)—BREACH OF CONTRACT—DEMAND—SUFFICIENCY.

A buyer of lumber, for delivery within a specified time, who requested the seller to rush the terms of the contract because the buyer was greatly in need of lumber, and who subsequently wrote that he had made sales based on the contract, and that he must insist that the seller make shipments at once, demanded performance so as to put the seller in default for failing to make deliveries.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 357; Dec. Dig. § 152.*]

3. CONTRACTS (§ 277*)—DEMAND OF PERFORMANCE—SUFFICIENCY.

The object of putting a party to a contract in default is to let the party know that the adverse party desires performance of the contract, and a demand of performance which makes the party understand that performance is expected is sufficient.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1217–1232; Dec. Dig. § 277.*]

4. EVIDENCE (§ 441*)—PAROL EVIDENCE—ADMISSIBILITY.

Under Civ. Code, art. 2276, providing that parol evidence shall not be admitted against what is contained in the acts, or at the time of making them, or since, a contract reduced to writing cannot be modified by parol proof of what was said or done before or at the time of the execution of the writing, though the attending circumstances are provable.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2030–2047; Dec. Dig. § 441.*]

5. SET-OFF AND COUNTERCLAIM (§ 32*)—RIGHT OF DEFENDANT—RECONVENTION.

A defendant may, as against a nonresident plaintiff, set up in reconvention any cause of action it may have against him.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. § 53; Dec. Dig. § 32.*]

6. SALES (§ 77*)—CONTRACTS—CONSTRUCTION.

A contract of sale of lumber stipulating for delivery and inspection, and allowing the buyer a discount if payment is made within 10 days, permits a discount if payment is made within 10 days after delivery and inspection.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 208–212; Dec. Dig. § 77.*]

7. SALES (§§ 81, 418*)—CONTRACTS—BREACH—RIGHT OF BUYER.

A seller of lumber for delivery within a specified time has, under Civ. Code, art. 2056, until the last day of the period to fulfill the contract, and where he does not make delivery on the last day the buyer may on the following day buy in the open market at the place of delivery, and charge the seller with the cost less what would have been the cost under the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 217–223, 1174–1201; Dec. Dig. §§ 81, 418.*]

8. SALES (§ 418*)—CONTRACTS—BREACH—DAMAGES.

The measure of a buyer's damages for the seller's breach to deliver the goods bought according to the contract is the difference between the contract price and the market price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

9. EVIDENCE (§ 113*)—MARKET PRICE—ADMISSIBILITY.

A printed price list of cypress lumber, prepared by an association controlling a large part of the cypress output of the country and acted on in making sales, is admissible to show the current market price of cypress lumber.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259–296; Dec. Dig. § 113.*]

*(Syllabus by the Court.)*

On Rehearing.

10. SALES (§ 418*) — BREACH OF CONTRACT — MEASURE OF DAMAGES.

In ascertaining the liability of a defendant for a breach of contract, the amount of loss sustained by the plaintiff, or the gain he has not realized, is the measure by which damages should be allowed. Since plaintiff bought the lumber at Sterlington, Louisiana, f. o. b. and intended to sell it in the St. Louis market, in order to ascertain the profit he would have made, it is necessary to add all his expenses to put the lumber on the St. Louis market to its cost at Sterlington, and then to deduct this sum from the price he would have received, the difference being his profit, or the amount of damage sustained by him through defendant's breach of contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

Appeal from Sixth Judicial District Court, Parish of Ouachita; J. P. Madison, Judge.

Action by the Hafner Manufacturing Company against the Lieber Lumber & Shingle Company and others. From a judgment for plaintiff, defendants appeal. Modified and rendered.

Hudson, Potts & Bernstein, for appellants. A. A. Gunby, Pugh, Thigpen & Herold, and Richard A. Jones, for appellee.

PROVOSTY, J. The plaintiff company deals in lumber, and has its establishment in St. Louis, Mo. The defendant company owns and operates a sawmill in the parish of Ouachita, in this state. The suit is in damages for the breach of a contract for the sale of lumber; the damages claimed being the difference between the price fixed in the contract and the market price of the same kind of lumber on the last day of the term fixed in the contract for the delivery of the lumber. The petition contains the following allegation:

"Petitioner shows that it had contracted with other persons to sell them the said lumber to be supplied by Lieber Lumber & Shingle Company, and that this fact was well known to defendant and its individual members; and that, by the failure of said defendant to comply with its contract, petitioner has had to buy other lumber to fill its contract at advanced prices; the price of cypress lumber having advanced between the date of the making of said contract and the date specified as the last within which the lumber should be delivered."

In view of that allegation, the defendant company filed the following plea of estoppel:

"Now into court come the defendants, and show to the court that the plaintiff having alleged in its petition, and thereby judicially admitted, 'that it had contracted with other persons to sell them the said lumber to be supplied by Lieber Lumber & Shingle Company, and that this fact was well known to defendant and its individual members, and that, by failure of said defendant to comply with its contract with petitioner, it had to buy other lumber to fill its contract at advanced prices,' is hereby estopped from claiming any other damage than the difference between the profit it would have made by the sale of the lumber purchased from defendants under the contract referred to in the above allegations, and the profit it did make in carrying out said contract after having purchased lumber at an advanced price to fill the same; that plaintiff having alleged, as aforesaid, the previous sale under contract of the lumber purchased from defendant, is limited in the measure of damages recoverable by it, if any, to those growing out of its inability to comply with its said contract, and cannot now shift its position and claim as a measure of damages the difference between the purchase price of said lumber and the market price at the termination of the contract."

This plea was overruled by the lower court, and properly. The allegation in question neither adds to nor detracts from the cause of action as otherwise set forth in the petition. Strike it out, or leave it in, and the petition remains exactly and precisely the same in legal intendment and effect. The allegation is mere idle verbiage. What contracts plaintiff may have had, or not had, with third persons with reference to this lumber, and what knowledge the defendant company may have had or not had of such contracts, is utterly immaterial, so long as no allegation is made that the contract sued on was made with reference to such other contracts; and no allegation of that kind is now made. The petition does not purport to charge the defendant company with a different obligation from that which would have resulted from the contract sued on if said other contracts had not been made.

The petition contains the allegation that the defendant company was "formally put in default by petitioner, as will fully appear by two written communications which are hereto annexed as part hereof." The communications in question are four letters which read as follows:

"We will ask you to kindly use your best endeavors to rush the terms of the contract. This stock will have to be shipped about January 1, 1906. Kindly rush shipments, and oblige," etc.
"We are very greatly in need of the lumber for which we have a contract with you, and will ask you to kindly advise us when you will have same ready for shipment. Respectfully," etc.
"Again, referring to the contract which we have with you for cypress, we must ask you to advise us when you will be ready to make ship-

ments of this stock. We have sold against the contract which we have with you, and our customer is complaining because the stock is not coming forward. It has been necessary up to the present time to ship on our orders lumber purchased from other parties on account of your nonshipment."

"We wrote you recently in regard to making shipments on the contract which we have with you for cypress lumber, to which you have not shown us the courtesy of a reply. We have made sales based on these contracts, and we must insist that you make shipments of same at once. Respectfully," etc.

Defendant contends that these letters were not sufficiently positive in terms to serve for putting in default.

What more positive than these letters the defendant company could wish we cannot imagine. The object of putting in default is to let the obligor know that the obligee desires that the contract should be fulfilled at the time prescribed. If by said letters the defendant company was not fully advised in that regard, we cannot imagine what sort of notification would have served the purpose. Demands for the performance of a contract are not to be considered ineffective because couched in polite terms; all that is necessary is that the terms be sufficient to let the obligor know that performance of the contract is expected. Woodstock Iron Works v. Standard Pulley Manufacturing Co., 115 La. 829, 40 South. 236.

The answer of the defendant contains the following averments:

"Defendants aver that the cause, consideration, and condition upon which the agreement between plaintiff and this defendant was entered into and based has failed, and that defendants are in no manner bound thereby.

"Defendants aver that, when approached by plaintiff on the subject of the contemplated agreement for the purchase of cypress lumber, defendant company through its senior member, L. L. Lieber, declined entering into said contract or agreement for the future sale of lumber in such quantities as desired by the plaintiff (sufficient to practically consume the output of its mill), unless defendant could make arrangements for such financial assistance as was necessary to pay the expenses of the mill and the cutting, hauling, and purchase of timber, etc., that were necessary in order to carry on its business and to fill a contract of the character

proposed to the amount of something near ten thousand dollars ($10,000) in advances or assistance to said amount, it could not enter into any contract of the character desired.

"Thereupon the plaintiff agreed with defendant that, if defendant would enter into a contract or promise to fill an order or bill of lumber to the amount desired and as ordered by plaintiff, it, the plaintiff, would advance and furnish to the defendant from time to time whatever amount might be desired or necessary up to the amount of $10,000 on its demand and for the purposes hereinabove set forth.

"That with this assurance of advances and assistance, and relying upon this promise of advances, the defendant consented and agreed to fill said order and accept the same.

"That said promise of advances, though made verbally and previous to the agreement to furnish said lumber, was a consideration precedent to the defendant's subsequent agreement to fill said bill, and was the cause, consideration, and motive for his entering into an agreement or accepting said order to that amount, and that without this previous agreement for assistance and advances the propositions of plaintiff to be furnished so large an amount as that wanted by plaintiff would not have been undertaken or considered.

"That defendant's consent to whatever proposition or agreement is set forth in the subsequent correspondence between plaintiff and defendant, and the acceptance of the order as alleged by plaintiff, was obtained and procured only on this previous agreement made by plaintiff for advances and assistance, and was a condition precedent, and the sole cause of respondent's accepting said order and agreement to deliver said lumber at the prices therein named and stipulated.

"That, relying upon the good faith of plaintiff, and its promises of financial aid and advances, this defendant undertook to furnish plaintiff with such cypress lumber as it desired.

"And avers that, as soon as it became necessary for respondent to have funds to carry out said contract, respondent called plaintiff by letter for assistance by an advance on shipments previously made in the sum of $1,000, which plaintiff refused to advance, and, notwithstanding repeated demands of respondent, showing the urgent necessity for such advances, declined, and persisted in declining, to carry out said agreement, or to make respondent any of the promised advances or render it any of the promised assistance.

"Respondent avers that plaintiff further violated its contract by deducting 2 per cent. discount from the amount of the proceeds for such lumber as was delivered by respondent to it when said remittances were made more than 10 days after delivery and shipments, and said plaintiff persisted in doing so after objections and protests from respondent against such action on plaintiff's part, and in utter disregard of the terms of the contract permitting discount of 2 per cent. to be made only when payment

was made within 10 days from the delivery of the lumber by respondent to plaintiff.

"Avers that plaintiff was put in default by frequent demands in writing from defendant that it comply with its promise of assistance and advance to respondent from time to time the amounts required by respondent to the amount of $10,000, and that it pay to respondent, as required in the contract, the amount of the purchase price of such lumber as was furnished to plaintiff, without deducting therefrom 2 per cent., or any other amount of discount, when said payments were not made within 10 days from date of acceptance of or delivery and shipments by said plaintiff.

"Avers that, because of these breaches and defaults in its contract, and the refusal on the part of the plaintiff to furnish the promised and necessary assistance, and to pay the purchase price of such lumber as was delivered to it without wrongful and unjust deduction, and deductions not provided for in the contract, defendant was released and relieved from any or further obligation or liability to plaintiff on said contract.

"And now, becoming plaintiff in reconvention, defendant further avers that, upon the price of the lumber furnished and sold by it to plaintiff, the plaintiff illegally and without any right or excuse, and against the will of defendant, deducted the amount of 2 per cent. upon all sales for lumber delivered to it, said discounts aggregating the sum of $466.82, which, in reconvention, plaintiff justly owes, and should be condemned to pay to defendant.

"Defendant further shows that, by reason of the failure on the part of said plaintiff to comply with its contract, and by reason of its breach thereof, respondent was compelled to close down its mill, and was unable to continue operating the same for the period of at least five months, and was unable thereby to comply with its contract with plaintiff, and was therein damaged to the extent of the profit that respondent would have realized in carrying out the contract with plaintiff, in the sum of at least ten thousand dollars ($10,000), and in profits that respondent would have made from lumber cut and sold to other parties as well as the shingles, in the sum of at least five thousand dollars ($5,000), both of which amounts respondent is entitled to recover in reconvention."

When the defendant offered testimony to prove the oral contract here averred, objection was made on the ground that the written contract sued on could not be altered or varied by oral evidence; and the objection was sustained. Defendant's learned counsel argue that the purpose of the evidence was not to contradict or modify in the slightest degree the written contract; but to prove a separate, distinct, and independent collateral contract, made contemporaneously with the written contract, and which was the cause and principal motive that induced defendant to enter into the written contract.

The evidence was properly rejected. The oral contract in question, was not, according to the averment of it in the answer, a separate, independent, collateral contract, but part and parcel of the contract sued on. In other words, the said averments are, in effect, that the written instrument does not embody the entire agreement of the parties, as that agreement stood at the time the instrument was executed; but embodies only part of the agreement; that, in addition to paying the price stipulated for the lumber, the plaintiff company was to make an advance of money to aid defendant in its business; and that that part of the agreement was left out of the written instrument. If, after having drawn up a writing for the purpose of serving as complete evidence of their contract, parties were allowed thus to modify the contract by oral evidence, it is not seen what would become of the statute, article 2276, Civ. Code:

"Neither shall parol evidence be admitted against or beyond what is contained in the acts, or at the time of making them, or since."

By said evidence, defendant is clearly seeking to establish a different contract from the one contained in the written instrument which the parties drew up to evidence their agreement. Nothing of that kind was allowed to be done in the case of Davies v. Bierce, 114 La. 674, 38 South. 488, relied upon as precedent. In that case the writing sued on did not purport to embody the entire contract. Of course, parties are at liberty to enter into as many separate contracts as they please at one sitting, and each contract be provable by whatever evidence may be at hand for the purpose; but where parties, as in this case, draw up a writing to evidence

their contract, the contract, as thus evidenced, cannot be added to or detracted from by proof of what may have been said or done before or at the time of the execution of the writing. The attending circumstances are provable; but not agreements different from that expressed in the writing. There can be no doubt, also, that, as against a nonresident plaintiff, the defendant could set up in reconvention any cause of action it might happen to have. But defendant does not set up any such cause of action; it merely seeks to show that the contract sued on was different from what appears by the written instrument sued on.

We may as well dispose at this time of the averment in the answer that the plaintiff improperly deducted 2 per cent. on the price of the lumber that was delivered; in other words, paid 2 per cent. less than was due for said lumber. This discount was to be allowed if payment was made in 10 days. Defendant contends that the 10 days ran from the time of shipment. Plaintiff contends the delay ran from the time of delivery and inspection. Inasmuch as payment was not due, and, in fact, could not be made, before delivery and inspection, which was likely to be more than 10 days after shipment, we have not much hesitation in agreeing with plaintiff.

The court has experienced great difficulty in fixing the quantum of the damages. The measure of plaintiff's loss is the difference between the contract price and the market price. The lumber was to be delivered within nine months from the date of the contract. Defendant had until the last day of this term for fulfilling the contract. Civ. Code, art. 2056. Not getting the lumber on that day, plaintiff had the right to buy it in open market on the day following, and charge defendant with the cost, less what would have been the cost under the contract. Defendant was to ship the lumber to plaintiff in St.

Louis, Mo., where it was to be inspected and received. The open market whereof the price is to be ascertained is, therefore, that of St. Louis. As showing this market price, plaintiff has offered in evidence a printed book prepared and issued by the Cypress Selling Association to serve as reliable information of what is the current market price. This same list was adopted by this court as the basis for its judgment in the case of Williams v. Bienvenue, 109 La. 1029, 34 South. 63. It emanates from a reputable, reliable source. The Cypress Selling Association controls a very large proportion, if not the greater part, of the cypress output of the country. The reliability of this list is vouched for by several reliable witnesses, whose testimony is backed by actual sales. True, plaintiff has produced formidable evidence to show that large dealers succeed in buying considerably below the prices fixed in this list; but in a case of this kind, where the contractor has deliberately violated his contract for the sole reason, so far as the court can see, to take advantage of the rise in the market, and reap himself the benefit to which his contractee was justly entitled, the court is not disposed to be over particular in trying to ascertain how much below the said list a dealer like the plaintiff might have succeeded in buying in open market the lumber which defendant had contracted to deliver but deliberately chose not to deliver. We will therefore adopt this list as the basis for our judgment.

We find at page 36 of defendant's brief a computation of the damages according to this list. That computation appears to be correct, saving perhaps as to one item; we will accept it as such, saving as to the said item, reserving to either party the right to point out, on rehearing, any errors therein. The item in question is that of "Cost of unloading, inspection, yarding, reloading, and handling, to sell in St. Louis, at $5 per thou-

sand, or $7,380.96." We do not find in the record the evidence which will enable us to pass intelligently upon this item. The question with regard to it is whether or not the expenses mentioned in it are already included or not in the prices fixed by the above-mentioned printed price list upon which the present judgment is based. In other words, whether the wholesale seller of lumber in St. Louis in making his sales adds these expenses or not to the price fixed in said printed price list. As to said item the case will, therefore, have to be remanded; with instructions to the trial court to give plaintiff judgment for the full amount of this item in case the same is found not to have been already taken into computation in fixing the prices of the said printed list. In other words, in the event it is found that the said printed list shows the price of lumber before the said expenses are incurred; and, in the contrary event, to dismiss the demand of the plaintiff, except as already sustained by the present judgment. For the purpose of recasting, it will be necessary to set aside the judgment of the lower court.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be set aside; and it is now ordered, adjudged, and decreed that the Hafner Manufacturing Company, plaintiff herein, have judgment against the Lieber Lumber & Shingle Company, and the individual members of said company, Leopold L. Lieber, Ben Lieber, and T. B. Pratt, in solido, in the sum of $2,550, with 5 per cent. per annum interest thereon from the 27th day of June, 1908; and that the present suit be otherwise dismissed, except to an amount of $7,380.96, representing the item of "costs of unloading," etc., referred to in the foregoing opinion, as to which amount the case is remanded for further trial and adjudication in accordance with the views expressed in the foregoing opinion, and that the reconventional demand of the defendant be rejected. The defendant to pay all costs of the lower court, including those of the further trial; the plaintiff to pay the costs of this appeal.

### On Rehearing.

BREAUX, C. J. Judgment was rendered heretofore against defendant for $2,550, with 5 per cent. interest per annum from the 27th day of June, 1908.

In other respects the suit was dismissed, except as to an amount stated, as to which the case was remanded.

Defendant in its application for a rehearing urged different grounds.

At this time, we are informed, as relates to matter as to which the parties agree, that all sales are made f. o. b. mill, and, as to freight on merchandise, it is stated in a "Red Cypress Current Book" made part of the record.

The parties agree that the sale was made f. o. b. the mill at Sterlington, La., and that the little red book before alluded to includes the price of the lumber f. o. b. the mill plus the freight to St. Louis.

We do not understand that there is any disagreement between parties as to the cost of unloading, inspecting, grading, reloading, and handling lumber fixed at $7,380.96.

The point of disagreement between the parties is as follows:

Defendant's contention is that this amount of $7,380.96 and the freight charges should be added to the contract price in order to fix the cost of lumber before the amount of profit can be determined.

While plaintiff's contention is diametrically to the contrary; that that amount should not be added.

Plaintiff's contention is that, the railroad rate being 18 cents from Louisiana points to St. Louis, the price includes freight.

We have not found it possible to adopt that theory. There is no necessity, in view

of the contract, of adding freight to the price.

The terms of the contract do not admit of such addition. The price was a flat price, and by no construction should it include anything else—freight for instance.

In ascertaining the liability of defendant, the amount of loss sustained by plaintiff, or the gain he has not realized, is the rule, we think, that should be followed.

The application of this, and the method to be followed in determining the amount of damages have given rise to earnest argument and discussion.

We conclude that, plaintiff having bought the lumber at local prices, where it is not possible to establish with any degree of certainty its value, the St. Louis prices should be acceptable to all concerned. Plaintiff bought to sell in that market. The profit he would have made is a fair basis.

The price of the sale was $37,311.50.

At this point the defendant urges that the freight, to wit, $6,642.87 should be added, making the price in St. Louis, freight added, the sum of $43,950.37, plus the cost of inspection, measurement and other similar charges, $7,380.96.

| | |
|---|---:|
| Stating in tabulated form........ | $37,311 50 |
| Freight ....................... | 6,642 87 |
| Unloading, inspecting, yarding, and handling ..................... | 7,380 96 |
| Total ..................... | $51,335 33 |

—cost of lumber in St. Louis, as per defendant's calculations.

The price in the latter city was, according to defendant, $53,880.43.

Deducting cost of manufacture, freight, unloading, inspecting, yarding, and handling, viz., $51,335.33, leaving on the above theory an amount, which defendant concedes as due, of $2,550.10.

| | |
|---|---:|
| In other words.................. | $53,885 43 |
| Less cost, expenses, and charges before stated..................... | 51,335 33 |
| Balance due................. | $ 2,550 10 |

The contention of defendant is that under no circumstances could plaintiff have realized a larger amount from the contract.

The foregoing is the loss which plaintiff has suffered, or gain which he did not realize owing to defendant's breach of the contract.

In oral argument, the contention of learned counsel for defendant was that the price f. o. b. at the mill should be taken as the basis to fix the amount of loss that plaintiff has suffered or loss of freight of which he was deprived.

Plaintiff's order, which defendant undertook to fill, mentions opposite each item of lumber ordered the price per foot, amount stated, and opposite each item, f. o. b.

If the lumber was to be delivered f. o. b. at mill, and of this there does not seem to be any question, then the price agreed upon was at the mill, and is not subject to a deduction of freight and other charges before mentioned.

Plaintiff received the lumber at the mill. Plaintiff must necessarily pay the freight on this lumber to St. Louis.

If A. of this place buys goods of B. in Boston f. o. b. at the Boston freight depot the freight to this place must be paid by A.

It would be otherwise were he to buy merchandise in Boston, but deliverable f. o. b. at the place of destination.

The earnest opposition of plaintiff is to the item of $7,380.96, representing the cost of unloading, inspecting, yarding, reloading, and handling.

The amount is not seriously questioned; besides, it is sustained by a preponderance of the testimony.

The contention of plaintiff is that the defendant has no right to the deduction.

Plaintiff arrives at a balance of $9,931.06 which he claims.

We accept that balance but we deduct the $7,380.96 above mentioned, leaving a bal-

ance due of $2,550.10, for which defendant is liable.

The items of the amount to which plaintiff so seriously objects were necessary expenditures in order that a retail or wholesale dealer may sell his lumber in St. Louis.

There is no profit possible before the expenditure.

The plaintiff is at that expense, the evidence shows, in his sales. Why should not this expense be the same and these amounts deducted in this instance when fixing the amount of his freight?

The plaintiff cannot object, and has not objected, as we view it, to the freight charges. He has no better reason for objecting to the local charges in St. Louis; one is as necessary as the other in fixing the profits.

Now, as relates to the law:

Article 1934 of the Civil Code is plain. Loss and profit are the measure of damages. There is no loss save that loss resulting from the profit of which plaintiff was deprived.

The articles of our Code are modeled very closely upon those of the French Code upon the subject.

From Fuzier Hermann, vol. 2, p. 1092, in a case similar, it is said:

"Le juge doit en ce cas en faire l'appréciation d'après les régles de l'équité."

It is at least equitable to charge plaintiff with expenses before fixing the profit.

As to the place at which the freight and loss are to be determined:

We have stated that plaintiff has accepted the place and destination, and in that respect has followed the ruling in Williams v. Bienvenue, 109 La. 1029, 34 South. 63.

Southern Sawmill Co. v. Ducote, 120 La. 1052, 46 South. 20, cited by plaintiff in support of its claim.

The amount of $7,380.96 is admitted, for, in its petition for a rehearing, plaintiff claims this amount for its account in fixing balance due; plaintiff claims it as credit.

The court holding, on the contrary, that it is a debt, the amount claimed by plaintiff, as relates to the amount and the work and services rendered, is correct and must be allowed.

Furthermore, plaintiff avers that no rehearing is necessary in order to allow this additional amount to it, but that it can be decreed in passing on the application without the necessity of a formal reopening and rehearing of the case.

This applies with equal force to the case of the defendant.

It is therefore ordered, adjudged, and decreed that our former judgment be reinstated to the extent that it decreed that plaintiff have judgment in solido, as therein stated, for the sum of $2,550, with interest at rate and from date stated, and in all other respects decreed except as to the $7,380.96, as to it. The former judgment is not reinstated.

The claim is placed to defendant's credit, and the balance is as first stated in our decree. The judgment is not reinstated in so far as it decreed a remanding of the case.

It is ordered that it is not remanded, but finally decided as above. Defendant to pay the costs of the lower court; the plaintiff to pay the cost of this appeal, as before decreed.