No. 2040
Second Circuit

---

JEFFERSON COTTON OIL COMPANY v. ARCHIBALD GIN COMPANY, ET AL.

---

(December 10, 1925, Opinion and Decree)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Obligations—Par. 79, 80.**

The word "prompt" in a contract construed with the balance of the contract and the physical conditions existing at the time the contract was made; held contemplated delivery within four or five days from the date of the contract.
(See Civil Code, Art. 2057. Editor's note.)

**2. Louisiana Digest—Obligations—Par. 156, 178.**

Putting in default in view of Articles 1911, 1912 and 1933 of the Civil Code is not necessary after unreasonable delay, in the face of an advancing market; such damages under the circumstances being speculative and not contemplated when the contract was made.

**3. Louisiana Digest—Damages—Par. 71.**

In a contract requiring "prompt" delivery the plaintiff's right to recover damages is limited to the difference in the price stipulated in the contract and the market price a short time thereafter.

Appeal from Seventh Judicial District Court of Louisiana, Parish of Richland, Hon. John R. McIntosh, Judge.

This is a suit in which the plaintiff demanded damages for breach of contract. There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Tobin R. Hodge, of Rayville, attorney for plaintiff, appellant.

G. W. Smith, of Rayville, attorney for defendant, appellee.

REYNOLDS, J.    Plaintiff sues defendant, a commercial partnership composed of A. B. Chapman, D. F. Chapman, L. B. Archibald, P. Archibald and A. Brooks, for $760.80 and legal interest thereon from judicial demand for breach of contract to deliver thirty-four tons and two hundred and ninety pounds of cotton seed sold by defendant to plaintiff.

On September 27, 1922, plaintiff and defendant entered into a contract whereby defendant sold to plaintiff "for shipment prompt" at $35.00 per ton f.o.b. cars Archibald, Louisiana, one hundred tons or four cars of cotton seed.

Plaintiff alleges that defendant delivered to it sixty-five tons and seven hundred and ten pounds of cotton seed but failed to deliver thirty-four tons and two hundred and ninety pounds of cotton seed and that it was compelled to buy that quantity of seed in the open market and pay therefor the market price which was then $55.00 per ton and that in consequence defendant owes it the difference of $20.00 per ton on the thirty-four tons and two hundred and ninety pounds, or $685.80.

Plaintiff further alleges that it has been compelled to employ an attorney at a cost of $75.00 to recover the loss defendant caused it by its breach of contract.

Defendant denied liability and alleged that plaintiff had agreed to provide it with railroad cars in which to load and ship the seed and that it failed to do so and owing to a general car shortage it was unable to obtain cars on which to load and ship the seed.

Defendant further alleged that the market price of cotton seed at the time it failed to make delivery was $35.00 per ton and that plaintiff could have obtained the cotton seed in open market at the same price defendant had contracted to deliver it for and therefore plaintiff had suffered no loss.

Defendant denied liability for the attorney's fees.

Defendant further alleged that the contract provided that a variation of ten per cent either way in performance of the contract should be deemed compliance and that being obliged to deliver over ninety tons under the contract in no event could it be held liable for more than the difference between that quantity and the quantity actually delivered or 24.29 tons.

On these issues the case was tried and there was judgment dismissing plaintiff's

suit and rejecting its demands and it has appealed.

## OPINION

The first question to be decided is, within what time did defendant contract to deliver the cotton seed? .

This must be determined from the contract itself and the physical conditions that existed at the time the contract was entered into.

The word "prompt" in the contract was written into a printed form and must be given full force in construing the contract, for it was doubtless written in for the purpose of showing the time within which the cotton seed was to be delivered to plaintiff.

Webster's Dictionary defines "prompt" as "ready and quick to act"; "responding instantly"; "immediate"; "done or rendered readily or immediately".

In "Words and Phrases" we find that "prompt" is synonymous with "at once" and in its ordinary accepted meaning, "at the same time", "immediately", "without delay", "at one and the same time", "simultaneously".

In connection with the above definition of the word "prompt" the physical condition that existed at defendant's gin on the date of the contract are relevant.

A. B. Chapman, who signed the contract for the defendant, testified, page 25:

"Q. At the time you signed this contract with Mr. Lyman, what, if anything, did he promise you relative to furnishing cars?

"A. Mr. Lyman had been there two or three dozen times trying to buy seed. I told him it would not be any use in selling them to him. We had sold the Monroe people and had not been able to get cars, and he said: 'Well we have got four cars and we will ship them out to you; we have got them there at the mill and will unload them and ship them out to you. You can look for them tomorrow or the next day'.

"Q. Was that the inducement that he held out to you to get you to sign this contract?

"A. Yes, sir; and the next time he come why he told us to write to the Interstate Commerce Commission to try to get cars; said he was not able to get the cars and had tried everywhere."

Page 27:

"Q. If Mr. Lyman had not made the promise to you to furnish you the cars, would you or would you not have gone into this contract?

"A. No, sir: I was hauling seed every day putting them in different houses. I had some at my house in a house; had some over at Rushings'; had his shop full.

"Q. About how many tons did you have on hand at the time you signed this contract?

"A. Well let me see—about a hundred and forty or fifty tons. I got about twenty tons burned.

\* \* \*

"Q. The man, Mr. Lyman, was to furnish you these cars for the prompt shipment of the cotton seed?

"A. He told me he had the cars there and they would unload them and they would ship them out and they would get there the next few days. He stayed there all the evening and he was at my house while I was settling with the hands."

From the above definition of the word "prompt" and the above quoted evidence showing the physical conditions that existed at the time the contract was made, we are of the opinion that the contract itself clearly contemplated that the cotton seed was to be delivered within four or five days from the date of the contract and that plaintiff can only hold defendant for the difference between the price of cotton seed on September 27, 1922, and a reasonably short time thereafter.

Civil Code, Art. 2057.

In Hafner Mfg. Co. vs. Lieber, etc. Co., 127 La. 348, 53 South. 646, the Supreme Court said:

"A seller of lumber for delivery within a specified time, has, under Civil Code

Art. 2056, until the last day of the period to fulfill the contract, and where he does not make delivery on the last day the buyer may on the following day buy in the open market at the place of delivery, and charge the seller with the cost less what would have been the cost under the contract.

"The measure of the buyer's damages for the seller's breach to deliver the goods bought according to the contract is the difference between the contract price and the market price."

In Bonner vs. Simon Rice Milling Co., 111 La. 1094, the Supreme Court said:

"It has uniformly been held by this court that damages for the inexecution of a contract of this kind, in the absence of bad faith, are those which were in the contemplation of the parties when the contract was made, and that such damages represent the difference between the contract price of the thing sold and the market value at the time and place at which it was to have been delivered."

In Garrison vs. Sherrill Hardwood Lumber Co., 156 La. 147, 100 South. 253, the Supreme Court said:

"Damages recoverable for breach of contract to deliver railroad ties sold where both parties are in default are those contemplated when the contract is made and is the difference between the contract price and the market value at the time and place of delivery."

While putting in default is a condition precedent to the recovery of damages where the violation of the contract is passive, in view of Articles 1911, 1912 and 1933 of the Civil Code a creditor cannot be permitted to demand performance of a contract after unreasonable delay and in the face of an advancing market; such damages being speculative and not contemplated when the contract was made.

Under the above authorities it is clear that plaintiff's right to recover damages is limited to the difference in the price of cotton seed on September 27, 1922, and a short time thereafter.

Mr. Chapman testified that Mr. Lyman told him:

"You can look for them (meaning the empty cars in which to ship the cotton seed) tomorrow or next day."

The District Judge evidently believed the testimony of Mr. Chapman and we so also, and for that reason hold that plaintiff's right of recovery must be limited to the time in contemplation between the parties at the date of the contract, and the time contemplated by them, we think, was from three to seven days, and during that time the price of cotton seed actually declined.

Plaintiff's witness, Mr. E. B. Lyman, testified, page 49, as to the price of cotton seed:

"The price of September 27th, our price was $35.00 and from that time on up to October 1st it did not vary from that price, that in the first week in October my limits were reduced $2.00 per ton, which lasted three or four days, and then we had a gradual rise in market from day to day until November 10th * * * ."

He further testified, on page 19:

"Q. Well, you are on the witness stand and got your little book?
"A. That is a secret judge, but I will give it to you.
"October 4th three cars from Collinson at $33.00; same date one car from Howard Mickey, $33.00."

From this testimony of defendant's witness it is seen that the price of cotton seed on October 4th, seven days after defendant sold the cotton seed to plaintiff, the price of cotton seed had actually declined $2.00 per ton, and plaintiff was in position to protect and we think actually did protect itself fully against any loss by reason of defendant's breach of contract.

Under the evidence in the case and the authorities above cited, we are convinced that the judgment appealed from is correct and it is accordingly affirmed.