520 So.2d 1173 (1988)
Douglas MORAN, Plaintiff-Appellee,
v.
WILSHIRE INSURANCE COMPANY and Peterson Sales Company, Defendants-Appellants.
No. 86-1048.
Court of Appeal of Louisiana, Third Circuit.
January 5, 1988.
*1174 Charles Whitehead, Jr., Natchitoches, for plaintiff-appellee.
Skeels, Baker & Coleman, Donald L. Baker, Shreveport, Watson, Murchison, Crews, Arthur & Corkern, Steven D. Crews, Natchitoches, for defendants-appellants.
Brittain, Williams & McGlathery, Joe Payne Williams, Natchitoches, for defendant-appellee.
Before KNOLL and KING, JJ., and CULPEPPER, J. Pro Tem.[*]
*1175 KNOLL, Judge.
This appeal concerns damages for loss of profits caused by the unreasonable delay in repairing plaintiff's Freightliner truck. The trial court awarded plaintiff, Douglas Moran (hereafter Moran), $7,500 for loss of profits, $4,000 attorney's fees and $2,460 penalties; all awards were made with legal interest and in solido against Wilshire Insurance Company (hereafter Wilshire) and Peterson Sales Company (hereafter Peterson).
Peterson appeals assigning as error that the trial court erred: 1) in casting Peterson in damages for loss of profits for not timely performing the contract for repairs without a putting in default; 2) in casting Peterson in solido with Wilshire for penalties and attorney's fees; and 3) in casting Peterson for one half the amount for which the insurer was held liable. Wilshire answered Peterson's appeal asking for 100% indemnification and/or contribution from Peterson.
Wilshire also appealed assigning as error that the trial court erred: 1) in finding that the insurer claimed that the insured failed to supply proof of loss by failing to sign the release; 2) in finding the insurer elected to repair the vehicle and was therefore liable; 3) in awarding damages for lost profits for not timely performing the contract for repairs without a putting in default; and 4) in awarding lost profits in the amount of $7,500.

FACTS
On October 17, 1984, Moran's Freightliner truck was involved in a single vehicle accident that resulted in considerable damage to the truck's cab. The truck, a 1977 White Freightliner, was insured for collision by Wilshire. Shortly after Moran reported the accident to his insurance agent he was contacted by Michael England of Aero Adjustment Bureau, an insurance adjuster retained by Wilshire to evaluate Moran's claim. Moran testified that he did not want the truck totalled, but repaired, because if it was totalled he would still owe the bank $6,000 to $7,000 without any means of paying it. For this reason Mr. England recommended to Wilshire that Wilshire repair the vehicle rather than total it. After Moran and Wilshire agreed that the truck would be repaired, the truck was moved to Peterson's in Shreveport which was the closest authorized Freightliner dealer.
Peterson appraised the damages to the cab at $11,187.02 and damages to the trailer at $948.02. The amount of damages to the cab and the trailer are not at issue in this case. Mr. England received Wilshire's draft to pay the amount of Moran's damages on December 5, 1984, and was instructed by Wilshire to have Moran sign a "Proof Of Loss Settlement and Subrogation Agreement" before giving Moran the draft. Moran refused to sign the document until his truck was repaired to his satisfaction. In the meantime the truck was at Peterson's waiting for authorization from the Morans to repair it. Sometime in the middle of December Mrs. Moran with her husband's consent, authorized Peterson to commence repairing their truck. The record does not contain a written agreement between Peterson and Moran to repair the truck within a fixed time; therefore it is apparent the agreement was verbal and without a fixed time.
In repairing the truck, Peterson subcontracted the body work to Spring Street Body Works. Peterson was not satisfied with the repair by Spring Street Body Works and subcontracted Commercial Body Work to properly repair the truck, which caused a delay.
On April 12, 1985, Moran filed a suit for penalties, attorney's fees and loss of profits against Wilshire and Peterson for not repairing the truck within a reasonable time. In amended answers Wilshire and Peterson pleaded a failure of a putting in default by Moran as an affirmative defense.
The truck was repaired and returned to Moran on May 17, 1985.

NECESSITY OF PUTTING IN DEFAULT FOR LOSS OF PROFITS
Wilshire and Peterson contend the trial court committed reversible error in *1176 awarding $7,500 damages to Moran for loss of profits due to unreasonable delays in repairing Moran's truck. They contend that in order for Moran to collect these damages, he would have to put them in default before such damages started to accrue.
Moran initially interjects that Wilshire and Peterson made the lack of putting in default an issue by filing supplemental answers asserting this as an affirmative defense. Moran argues that the assertion of an affirmative defense in this manner is untimely. We disagree. LSA-C.C.P. Art. 1151 permits the filing of an amended answer by leave of court. The record shows that the amended answers were filed with leave of court. Moran was given fair and adequate notice of the nature of the defense raised and does not contend that he was surprised by this issue. Compare Webster v. Rushing, 316 So.2d 111 (La. 1975). Moran's reliance on Collins v. Cranford, 396 So.2d 587 (La.App. 3rd Cir. 1981), is misplaced; in Collins the defense of failure to place in default was not raised by the pleadings. In the present case, Moran's only complaint is that the affirmative defense was not raised in the original answer. Accordingly, we conclude that the failure to place in default was properly raised.
In support of their contention, Wilshire and Peterson rely on LSA-C.C. Arts. 1989 and 1991. It is uncontested that Moran never placed Wilshire or Peterson in default prior to the filing of this suit, as provided by the above cited codal articles.
Damages for the breach of obligations are of two different kinds: 1) compensatory damages (dommages-intérets compensatoires) intended as reparation of the harm caused by the definitive nonperformance of the obligor, and 2) moratory damages (dommages-intérets moratoires) intended as reparation of the harm caused by the obligor's delay or retardation in performing the obligation. See 2 Litvinoff, Obligations, § 181 (1975). Damages for delay in the performance of an obligation are owed from the time the obligor is put in default. LSA-C.C. Art. 1989. If the obligor does not perform and the obligee does not put him in default and later receives the delayed performance, the obligee has no right to the damages the delay might have caused. 2 Litvinoff, Obligations, § 219 (1975). Our Civil Code specifically provides the manner in which an obligee can put the obligor in default: 1) a written request of performance; 2) an oral request of performance made before two witnesses; 3) by filing suit for performance; and 4) by a specific provision of the contract. LSA-C.C. Art. 1991.
The record clearly shows the truck was ultimately repaired and returned to Moran. Since Moran seeks damages for delay of performance (his loss of profits while the repairs were delayed), Moran is seeking moratory damages. See LSA-C.C. Art. 1989, Comment (b). Thus, it was necessary for Moran to place Peterson in default. In the case of Kings Truck & Body Works v. Barrett, 39 So.2d 601 (La.App. 2nd Cir. 1949), which is similar to the case sub judice, Barrett was not allowed to recover loss of earnings when work on his ice cream truck was not completely repaired timely, because he did not place Kings Truck & Body Works in default.
Prior to filing suit, the record contains no evidence of a written request for performance or an oral request of performance before two witnesses. There was testimony by Mrs. Moran that when she was in Shreveport she would go see the truck and inquire about it. Sometimes she telephoned to find out the status of the truck. Mr. Moran also made inquiries about the truck to Mr. England and Peterson's. Mr. Coon, the shop foreman for Peterson, testified that he wanted to get the truck in and out because he knew Moran was not "financially set well." We find this evidence does not alert Peterson that it would be liable for Moran's loss of profits while the repairs were delayed, such as the notice a putting in default would have served. The oral contract between Moran and Peterson did not have a fixed time; but we find the record supports that Peterson did not repair the truck within a reasonable amount of time. However, Moran should have given *1177 notice to Peterson that he was going to hold Peterson liable for his loss of profits caused by the delay of repairs by putting Peterson in default as required by Civil Code Article 1991. The function of a putting in default is to let the obligor know that the time to perform his obligation has arrived and that, from that moment on, he will be held responsible for the damage his nonperformance may cause. See 2 Litvinoff, Obligations, § 219 (1975). Thus, we must turn to Moran's lawsuit and determine whether or not it constitutes a putting in default.
Peterson contends that since Moran's suit is for a money judgment based on delay damages and his suit did not seek performance, Moran's suit did not constitute a putting in default. In other words, Peterson contends for Moran's suit to be considered a putting in default, the suit must be for specific performance.
The record shows that Moran's petition seeks $7,500 against Wilshire and Peterson for loss of profits as a result of the unreasonable delay in repairing his truck. He further seeks penalties and attorney's fees against Wilshire under LSA-R.S. 22:658. The suit did not mention specific performance. In Article 5 of his petition, Moran alleged: "As of this date, the said vehicle has not been repaired and returned to the possession of plaintiff." In Article 6 of his petition, he alleged Wilshire owed him penalties and attorney's fees because "said vehicle has not been repaired within a reasonable period of time...." In Article 7, as amended, Moran alleged "said vehicle should have been repaired within 60 days and as a result of the vehicle not being repaired timely, plaintiff has lost profits from his hauling business of not less than $7,500.00 which was the result of the joint actions of Wilshire Insurance Company and Peterson Sales Company."
While Article 1991 provides the manners of putting in default, it does not require a specific language in placing the obligor in default. The pertinent part of Article 1991 in the case sub judice states "by filing suit for performance." Article 1991 reproduces the substance of Civil Code Article 1911(2) (1870). See Comment (a). We note Article 1991 states "suit for performance" and that Article 1911(2) (1870) states "commencement of a suit." Clearly a common sense reading of Moran's suit alerted Peterson that the delay in repairing the truck was causing Moran to lose money for which Moran was going to hold Peterson responsible. Since Moran alleged the truck was still under repair when the suit was filed and he claimed damages because the repairs were delayed, implies an ongoing expectation of performance, but in the meantime he would hold Peterson responsible for damages. While the suit did not specifically request performance, we find its allegations were sufficient to serve the function of a putting in default. Simply stated, the suit does not have to be for specific performance to constitute a putting in default; the allegation of an expectation of performance is sufficient for a putting in default, as in this case. Our conclusion is more in keeping with our civilian tradition. On this very issue, Professor Litvinoff observes:
"If the obligee seeks damages for delay without requesting performance, such a demand, no doubt, will prompt the obligor to perform in order to minimize the damages he must pay, and the suit is thus an apt device for putting the obligor in default.
In sum, whether the suit is for specific performance, or for dissolution, or for damageseven more clearly so when alternative remedies are soughtcommencement of any suit is a proper way to effect a placing of the obligor in default under 1911(2) and related articles of the Louisiana Civil Code."
2 Litvinoff, Obligations, § 224 (1975) at page 418.
In the case of Hafner Mfg. Co. v. Lieber Lumber & Shingle Co., 127 La. 348, 53 So. 646 (1910), the defendant contended that certain letters were not sufficiently positive in terms to serve for a putting in default. The letters did not specifically request performance but did convey a reliance upon the contract. The Supreme Court found the letters sufficient for a *1178 putting in default and commented: "Demands for the performance of a contract are not to be considered ineffective because couched in polite terms; all that is necessary is that the terms be sufficient to let the obligor know that performance of the contract is expected." Id. 53 So. at p. 648. Accordingly, we conclude that Moran's suit filed on April 13, 1985, served as a putting in default and damages for delay in the repair of his truck were owed from that time on. LSA-C.C. Art. 1989.
We must now determine if both Wilshire and Peterson are liable for the damages. In awarding damages against Wilshire, the trial court relied upon Lonco Trucking v. American Road Insurance Company, 378 So.2d 569 (La.App. 3rd Cir. 1979). In Lonco, the vehicle at issue should have been totalled. The repairs cost $22,000 and were not completed until almost one year after the execution of the proof of loss. The litigation arose from the insurer's decision to satisfy its obligation to Lonco by repairing the vehicle rather than declaring it a total loss and pay Lonco, and because the repairs were unreasonably delayed. This court allowed the plaintiff to recover damages for loss of use because defendant exercised the option to repair the vehicle and defendant entered into an agreement with Huffman Motors to repair; therefore, Huffman was found to be defendant's agent. There was also a letter to the adjuster threatening suit unless the claim, including loss of use, was concluded. The facts in Lonco do not exist in the case sub judice. Moran never made a claim for the total loss of his truck; on the contrary, he informed the adjuster that he wanted his truck repaired because if the truck was totalled he would still owe the bank $6,000 $7,000. It was Moran's decision to have his truck repaired at Peterson's. Unlike Lonco where the insurer controlled the decision to repair rather than declare the vehicle a total loss, Wilshire did not initiate the decision to repair and did not independently enter into an agreement with Peterson to repair Moran's truck. There is no evidence of an agency relationship between Wilshire and Peterson. Therefore, in the absence of an agency relationship, we conclude that the trial court was clearly wrong in casting Wilshire in delay damages for Peterson's unreasonable delay in repairing Moran's truck.
We now address Peterson's liability. Peterson contends it is not liable because there was no putting in default and Moran's suit failed to constitute a putting in default. We have disposed of these issues and have determined that Moran's suit constituted a putting in default; therefore, if damages are owed, they are owed from April 13, 1985, the date suit was filed.
The trial court found that the "truck should have been repaired in three months but it took seven." The trial court apparently started counting from November 1984 because the truck was returned on May 17, 1985. Peterson did not start repairs on the truck until late December 1984 or early January 1985. The record is not clear as to the exact date. Peterson was waiting for authority from Moran to repair his truck and Mrs. Moran gave the authority sometime in December 1984. There was a misunderstanding between Moran and Wilshire over signing the proof of loss which also contained a release and subrogation. Because of a previous collision claim that Moran made and was not satisfied with, he did not want to sign anything until his truck was repaired to his satisfaction. In any event he authorized Peterson to repair his truck sometime in December 1984. We will not hold Peterson accountable until it was authorized by Moran because it did not contribute to this part of the delay. There is not enough evidence in the record to hold anyone accountable for the delay prior to Peterson receiving authorization.
We find the record supports it took approximately five months to repair the truck. The trial court found the truck should have been repaired in three months. We accept the trial court's finding that three months was a reasonable time to repair Moran's truck. In determining damages, the trial court made the following finding of facts:

*1179 "Counsel for the defendants point out the crudeness, skimpiness and disarray of plaintiff's records and the court did not miss that point. The court also did not miss the fact that Mr. and Mrs. Moran are not well educated and sophisticated business people. They obviously had very little formal education, especially in modern business and accounting practices but the court is convinced they were sincere and honest in their testimony. The court believes they did, in fact, lose their contract with Mak-Wee as a result of being without their truck and that they suffered losses of at least $2,920.85 per month and that they sufficiently discharged their burden of proof on this point."
We will not disturb the trial court's factual findings absent manifest error. Canter v. Koehring Company, 283 So.2d 716 (La. 1973). The damages, at $2,920.85 per month, commenced to run with the filing of suit on April 13, 1985. Moran received his truck on May 17, 1985; therefore, Peterson owes Moran approximately one month of delay damages which is $2,920.85.

PENALTIES AND ATTORNEY'S FEES
Wilshire and Peterson contend the trial court erred when it awarded Moran penalties and attorney's fees pursuant to LSA-R.S. 22:658. In awarding penalties and attorney's fees, the trial court stated:
"Addressing first the issue of penalties and attorney fees the court notes the general rule set out in head note one of Lonco as follows:
`Where insurer elected to restore wrecked truck to its former condition, rather than pay for its total loss, failure to have truck repaired within a reasonable time, even though caused by repairman's inability to obtain necessary parts, justified imposition of statutory penalty and reasonable attorney's fee against insurer.' LSA-R.S. 22:658."
Penalties and attorney's fees under LSA-R.S. 22:658 can only be awarded if the insurer is found to be arbitrary, capricious, or without probable cause. The penalty provisions of LSA-R.S. 22:658 are stricti juris and are imposed in only those instances where the facts show that the insurer's failure to timely pay insurance benefits is arbitrary, capricious, or without probable cause. Carter v. American Mut. Liability Ins. Co., 386 So.2d 1072 (La.App. 3rd Cir. 1980). LSA-R.S. 22:658 applies only to insurers. The award of penalties and attorney's fees can only be made when provided by statute or contract. General Motors Acceptance Corp. v. Meyers, 385 So.2d 245 (La.1980). Since Peterson is not an insurer and there is no statute authorizing penalties and attorney's fees against Peterson, it was clearly wrong for the trial court to cast Peterson with penalties and attorney's fees.
Wilshire, the insurer, can only be cast with penalties and attorney's fees if it was found to be arbitrary, capricious, or without probable cause. In making this award, the trial court stated:
"Turning now to the claims as between the defendants the court is unable to find either defendant fully responsible or fully blameless for the losses, suffered by Mr. Moran. Had the insurer settled Mr. Moran's claim as a total loss, the repair facility would have had no liability. However, had the repair facility timely and properly made repairs the insurer would have suffered no loss."
The record shows that Moran did not ask that his truck be totalled, as in Lonco, supra. To the contrary, he wanted it repaired. Whether the truck should have been totalled or repaired was not an issue between the parties. An unreasonable delay in repairs, without more, will not automatically activate the provisions of LSA-R. S. 22:658 against the insurer; there must be a finding that the insurer was arbitrary, capricious, or without probable cause. The purpose of LSA-R.S. 22:658 is to insure that an insurance carrier which is fully apprised of the facts and circumstances which establish the plaintiff's right to recovery does not arbitrarily, or capriciously deny any amount of a claim that is due. Savoy v. Chapman, 441 So.2d 21 (La.App. 3rd Cir.1983). In the present case the trial court found there was an unreasonable delay *1180 and the record supports this conclusion. However, the trial court did not find Wilshire acted arbitrarily, capriciously or without probable cause. We have carefully studied the record and conclude that the record does not support that Wilshire acted arbitrarily, capriciously, or without probable cause, therefore, it was error to cast Wilshire with penalties and attorney's fees.
We will not address the remaining assignments of errors since they are now rendered moot.
For the foregoing reasons, the judgment of the trial court finding Wilshire Insurance Company liable for damages, penalties and attorney's fees is reversed and set aside. The judgment of the trial court casting Peterson Sales Company with penalties and attorney's fees is reversed and set aside. The judgment of the trial court casting Peterson with $7,500 in delay damages is hereby amended and IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Douglas Moran and against Peterson Sales Company in the sum of $2,920.85, plus legal interest from date of judicial demand until paid. Costs of this appeal are assessed to Peterson Sales Company.
REVERSED IN PART, AMENDED IN PART AND RENDERED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.