173 So. 757

GIBSON et al. v. ZYLKS et al.

No. 34103.

March 29, 1937.

Mabry & Carstarphen, George T. Mc-Sween, and Edward Barnett, all of Shreve-port, for appellants.

Ben E. Coleman, of Shreveport, for appellee Gerhig Co.

Wilkinson, Lewis & Wilkinson and Tuck-er & Mason, all of Shreveport, T. M. Mill-ing, of New Orleans, and J. S. Atkinson and W. M. Phillips, both of Shreveport, for appellees O. J. Rowe and others.

ROGERS, Justice.

On January 2, 1918, Mrs. Martha M. Zylks sold by authentic act to Sam G. Zylks, one of her sons, 74 acres with the improvements in the W.½ of S.W.¼ of Sec. 10, Tp. 23, R. 16 W. Caddo parish. During the years 1934, 1935, and 1936, Sam G. Zylks, the vendee, transferred by lease and by sale to various persons, natur-al and artificial, certain mineral interests and rights in and upon the property.

On June 6, 1936, six of the children of Mrs. Martha M. Zylks, who died on Octo-ber 28, 1918, brought this suit against their brother Sam G. Zylks and his mineral les-sees and vendees, to annul the sale from Mrs. Zylks to Sam G. Zylks and to cancel all the subsequent mineral leases and sales. Plaintiffs asked to be recognized as the owners of an undivided six-sevenths in-terest in the property described in the orig-inal act of sale and for an accounting by the Standard Oil Company of Louisiana and the Haynes Production Company, Inc., two of the defendants, of the amount of oil, gas, and other minerals extracted from the property in dispute.

All the defendants, except Sam G. Zylks, filed exceptions of no cause or right of action. The trial judge sustained the ex-ceptions and plaintiffs have appealed from the judgment.

Henry Zylks, one of the plaintiffs, and O. L. Hickman, one of the defendants, died during the pendency of this appeal and the heirs of Zylks and the administratrix of Hickman's succession have been made par-ties to the suit.

Plaintiffs, in their petition, attack the deed from Mrs. Martha M. Zylks to Sam G. Zylks on numerous grounds, all of which they have abandoned in this court, except those embraced in the allegations that the deed is an attempt to dispose of a suc-cession not yet devolved, to make a dis-position mortis causa by deed and to es-

tablish a fidei commissum. Those allegations are predicated on the following clause contained in the deed, viz.:

"In making this deed to Sam G. Zylks it is understood and mutually agreed that the said Mrs. M. M. Zylks is to have the revenue from this property for her support as long as she lives and to own it as her home untill (sic) death and then this deed to operate as a complete transfer of said property to the said Sam G. Zylks and it is agreed that if the said Sam G. Zylks should die first then in that event the property shall still be used to support the said Mrs. M. M. Zylks and the family of the said Sam G. Zylks and at the death of said Mrs. M. M. Zylks then to revirt (sic) to the heirs of the said Sam G. Zylks."

■ Plaintiffs' allegations are wholly insufficient to maintain their action. The deed from Mrs. Zylks to Sam G. Zylks is an ordinary warranty deed. It accurately describes the property conveyed and recites the purchase price, namely, $400, which the vendor acknowledges she received in cash. Delivery of the property accompanied the deed itself. Civ.Code, art. 2479. Therefore the deed on its face exhibits a perfect sale—the thing sold, the price agreed upon and paid, and the delivery effected. Civ.Code, art. 2439.

So far as the appellees, third persons acquiring interests and rights on the face of the public records, are concerned, the deed from Mrs. Zylks to Sam G. Zylks effected a sale of the property therein described. Waller v. Colvin, 151 La. 765, 92 So. 328, and the authorities therein cited.

■ Nor are the elements of a sale contained in the deed nullified by the stipulations contained in the clause hereinabove quoted.

We are bound to give effect to all contracts according to the true intent of the parties; and such intent is to be determined by the words of the contract, when they are clear and explicit. Civ.Code, art. 1945. One of the rules for the interpretation of contracts is, that where there is a doubt as to the true sense of the words of a contract, they may be explained by referring to other words or phrases used in making the same contract. Civ.Code, art. 1948. The true meaning of its terms should be sought by endeavoring to ascertain what was the common intention of the parties. Civ.Code, art. 1950.

Another rule for the interpretation of contracts is, that all clauses of a contract are to be interpreted the one by the other, giving to each the sense that results from the entire act. Civ.Code, art. 1955. And when a clause is susceptible to two interpretations, it must be understood in that in which it may have some effect, rather than in a sense which would render it nugatory. Civ.Code, art. 1951.

When the intent of the parties is doubtful, the manner in which they have executed the contract furnishes a rule for its interpretation, Civ.Code, art. 1956. And in a doubtful case, the agreement should be construed against the obligor. Civ. Code, art. 1957. So that any ambiguity in a contract of sale should be construed against the vendor. Civ.Code, art. 2474.

Therefore, if there can be any doubt as to the effect of the clause under review, not only should the doubt be resolved against the vendor and her heirs and the manner in which they have executed the contract be considered, but also the clause should be construed with reference to and in connection with the other clauses contained in the deed, so as to render it effective rather than nugatory.

From our reading of the whole instrument, we are impressed with the view that it evidences the sale of the property described with the reservation of a usufruct for life in favor of the vendor.

In the clause itself, the instrument is twice referred to as a deed, and for eighteen years it has been treated as such by Mrs. Zylks, the vendor, plaintiffs, as her heirs, and defendant Sam G. Zylks, their coheir, the vendee.

Usufructs may be established by deeds of sale. Civ.Code, art. 540; and under such modifications as the person who grants the right may be pleased to annex to its exercise. Civ.Code, art. 542.

The stipulation that "the said Mrs. M. M. Zylks is to have the revenue from this property for her support as long as she lives and to own it as her home until death," is nothing more than a statement of the codal provisions governing usufruct.

Article 533 of the Civil Code defines usufruct as the right of enjoying a thing, the property of which is vested in another, and to draw therefrom all the profit, utility, and advantages which it may produce. Article 544 of the Civil Code provides that all kinds of fruits, natural, cultivated, or civil, produced during the usufruct by the thing subject to it belong to the usufructuary. And article 606 of the Civil Code declares that the right of usufruct expires at the death of the usufructuary.

The words "own it" used by the parties in the quoted clause should be construed with reference particularly to the qualifying words "as her home" and in connection generally with the other clauses of the deed. As thus construed, the words fix in a definite manner what the parties intended their rights should be in the property described in the instrument.

The word "own" is a general term which varies in its significance according to its use. As applied to real estate, it usually denotes a fee-simple estate, but as titles to real property vary from that of absolute ownership to that of mere occupancy, it may also denote a less estate, such as a servitude or a usufruct.

So the word "owner" as applied to real property may designate the owner of the fee or the owner of a less estate, as a lessee for a term of years or any rightful proprietor, and its meaning is to be gathered from the connection in which it is used and from the subject-matter to which it is applied. 16 R.C.L. 532.

In the rules governing ownership contained in the Civil Code, we find that ownership is the right by which a thing belongs to some one in particular, to the exclusion of all other persons. Civ.Code, art. 488. And the ownership of a thing, whether it be movable or immovable, includes the right to all that the thing produces. Civ.Code, art. 498. This is perfect ownership as defined by article 490 of the Civil Code. But that article also provides

for imperfect ownership, which it declares exists as to an immovable when the immovable is charged with a real right, such as a usufruct.

Tested by the foregoing rules of legal interpretation, the word "own" as contained in the deed is synonymous with the word "possess" or the word "use," the clear meaning of the words "own it as her home" being that the vendor retained only the possession or use of the property, and not its ownership in fee-simple. Any other interpretation would render the contract self-destructive, since, manifestly, the owner cannot convey the fee and at the same time retain it.

Looking to the subject-matter of the contract and considering all the terms of the instrument, the suggested interpretation is the only one that will make an entire and consistent construction of the whole.

The contract provides that, "the said Mrs. M. M. Zylks is to have the revenue from this property for her support as long as she lives and to own it as her home until death." On her death, according to the following clause, the "deed is to operate as a complete transfer of said property to said Sam G. Zylks."

If it had been the intention of the parties that Mrs. Zylks should own the property until her death and that then the deed would operate as a transfer to Sam G. Zylks, it was wholly unnecessary for the parties to stipulate that Mrs. Zylks was to own it "as her home," since they could have accomplished that result by omitting from the deed the words "as her home." But the parties further provided that on the death of Mrs. Zylks the "deed is to operate as a complete transfer of said property to said Sam G. Zylks." The concluding provision declares that "if the said Sam G. Zylks should die first, then in that event the property shall still be used to support the said Mrs. M. M. Zylks and the family of the said Sam G. Zylks, and at the death of the said Mrs. M. M. Zylks then to revert to the heirs of the said Sam G. Zylks."

It is plain that the notary in drawing the deed made the statement that Mrs. Zylks was to "own" the property as her home until her death in the sense that he made the subsequent statement in the same paragraph that the property was to be "used" for her partial "support" until her death.

Article 606 of the Civil Code declares that the right of the usufruct expires at the death of the usufructuary. And article 625 of the same Code provides that on the expiration of the usufruct, it returns to and becomes again incorporated with the ownership, and from that time the person who had only the naked ownership begins to enter into a full and entire ownership of the property.

The logical interpretation of the contract is that upon its execution the naked ownership of the property passed to Sam G. Zylks and the usufruct of the property remained in Mrs. M. M. Zylks. Upon the death of Mrs. Zylks, the usufruct was to terminate and return or revert to Sam G. Zylks or his heirs, whose title would then become complete or perfect.

As hereinbefore stated, Mrs. Zylks died on October 28, 1918, so that the title of

Sam G. Zylks became complete or perfect as of that date. From that time until the institution of this suit, Sam G. Zylks exercised all the rights of complete or perfect ownership of the property undisturbed by the claims of plaintiffs or of any other person or persons.

■ Appellants argue that the effect of the concluding portion of the clause providing that if Sam G. Zylks died before Mrs. M. M. Zylks the property was to be used to support Mrs. Zylks and the family of Sam G. Zylks, constituted an attempt on the part of the contracting parties to change the order of succession, so that the property might be inherited by the heirs of Sam G. Zylks and not by the heirs of the owner of the property.

The argument is untenable. According to the recitals of the deed, Sam G. Zylks paid $400 for the thing conveyed. As to the appellees, dealing with the property upon the face of the public records, the thing conveyed was the property described subject to the usufruct retained by the vendor, which expired at her death. The title to the property was not held in suspense in any manner whatever. The deed vested the naked ownership of the property in Sam G. Zylks and the usufruct of the property in Mrs. M. M. Zylks. After the execution of the deed, Mrs. Zylks did not own the fee, but only the right of using the property, which was the only thing that could revert to Sam G. Zylks or his heirs upon her death.

As heretofore stated, the Civil Code provides that the right of usufruct expires on the death of the usufructuary. The reason for this is that the usufruct, unless

otherwise provided, is personal to the usufructuary. There is no provision, however, that the usufruct expires on the death of the naked owner. Nor is there any reason for such a rule. The heirs of the naked owner inherit the naked ownership subject to the rights of the living usufructuary. This is so, because the usufruct of immovable property is a real right, Civ. Code, art. 2012, and as such, passes with the property to the heirs. Civ.Code, art. 1997. Hence, the provision that "the property shall still be used to support Mrs. M. M. Zylks" is nothing more than a statement of the legal consequences which would follow the death of Sam G. Zylks before that of Mrs. M. M. Zylks.

The following words, "and the family of the said Sam G. Zylks," merely evidence the intention of the parties to modify the usufruct granted Mrs. Zylks in order to support the family of Sam G. Zylks, in the event of his death. The right of usufruct is subject to the modifications and conditions annexed to the grant. Civ.Code, arts. 542, 608. The right of usufruct is also divisible and may be conferred even on several persons in a divided or undivided portion. Civ.Code, arts. 538, 539. It is wholly reasonable that Sam G. Zylks, who was acquiring the property without the right to its immediate use, should desire to secure a home for his family, in the event of his death, and that Mrs. Zylks should be willing to consent to a modification of her usufruct for that purpose.

The concluding words, "and at the death of Mrs. M. M. Zylks, then to revert to the heirs of Sam G. Zylks," is merely a statement of the law governing successions. Necessarily, those words must be constru-

ed with the entire concluding portion of the clause, reading as follows, "and it is agreed that if· the said Sam G. Zylks should die first then in that event the property shall still be used to support the said Mrs. M. M. Zylks and the family of the said Sam ·G. Zylks and at the death of said Mrs. M. M. Zylks then to revert to the heirs ·of the said Sam G. Zylks." When this is done, it becomes apparent that the intent of the parties was that if Sam G. Zylks should die first the undivided usufruct held by Mrs. Zylks was ·to be modified to the extent of also providing for the support of the family of Sam G. Zylks, and that upon the death of Mrs. Zylks, the complete or perfect ownership of the property, free of the usufruct in favor of Mrs. Zylks, was to become vested in. the heirs of Sam G. Zylks.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., takes no part.