McCALEB, Justice.
 

 This suit involves ownership of a certain parcel of land adjacent to Calcasieu Lake in Cameron Parish which was for many years submerged and covered by the waters of Calcasieu Lake -as a result of erosion but which, due to the deposit of waste from dredging operations by the Federal Government in constructing a ship channel near the property, has been elevated to such an extent that it is now high land. The plaintiffs are the heirs and assigns of one Michel Doiron, who, on April 26, 1916, sold to Felix D. O’Bryan, under whom the main defendants claim, a specified portion of a tract which he owned bordering on the west bank of the lake. As the land in dispute is valuable for mineral purposes, it has been leased by both plaintiffs and defendants to J. S. Abercrombie Company -and Magnolia Petroleum Company who are also joined as parties defendant.
 

 Plaintiffs, claiming the possession of the land by use thereof for the grazing of cattle, instituted this suit as an action in jactitation to be relieved of defendants’ pretensions of ownership as evidenced by their lease of the property to the oil companies. Preliminarily, defendants placed plain
 
 *1076
 
 tiffs’ alleged possession at issue but, after a hearing on this question, plaintiffs’ position was maintained. Thereafter, defendants converted the suit into a petitory action by assertion of ownership of the land ■under the 1916 deed from Doiron to O’Bryan. Following a trial of the merits and the disposal of various collateral pleas', there was judgment in favor of plaintiffs recognizing their ownership of the land and ordering the annulment of the mineral lease executed by defendants to Magnolia Petroleum Company and J'. S. Abercrombie Company. All parties defendant have appealed from the adverse decision.
 

 Imprimis, it is apt to state that appellant oil companies are not contesting the decision of the trial court as they hold leases from plaintiffs as well as defendants. They have appealed as a matter of protection in the event the judgment of the lower court is reversed, as that judgment ordered the cancellation of the mineral lease and assignments they hold from defendants. Hence, if the latter are successful here, the contracts with the oil companies should be revised.
 

 In 1883, Michel Doiron acquired, in a partition among the heirs of the successions of Edmund Doiron and his wife, a tract of land bordering the west bank of Lake Calcasieu designated as Lot No. 1. This lot was part of the original tract, which emanated from a United States patent granted in 1881 to' Burrel Franks based on a United States survey made by H. T. Williams in 1833. Lot No. 1, which; Michel Doiron obtained in the partition, is; bounded on the east and north by Calcasieu1 Lake and contained approximately 72.58 acres. Under the deed to Feiix O’Bryan dated April 26, 1916, Doiron sold the following described property:
 

 “Beginning at a point on the
 
 shore-
 
 of Calcasieu Lake in Lot One, Township 12! South, of Range 9 West; thence running South on a line, eighty degrees and forty-five minutes W. to- an iron post, said post, being located 349 feet East and 2725 feet: North of the Southwest corner of .Lot No-One; thence N. ten degrees and forty-eight minutes West to the
 
 shore
 
 of Calcasieu Lake; thence following the meanderings of the lake shore to the point of beginning, together -with
 
 all riparian rights:
 
 belonging to the vendor herein:
 

 “Less and except land conveyed to the Lake Charles and Cameron Transportation Company, described as beginning on the-bank of Calcasieu Lake in Lot One, Township 12 South, of Range 9 West; thence.running 106 feet west on the south side-of road so surveyed; thence North 106* feet to the bank of Calcasieu Lake; thence-on an easterly and southerly direction along-the lake shore to the point of beginning;
 

 “And also less and except a certain piece-of land-belonging to Bellone Granger, described as beginning at a point on the bank, of Calcasieu Lake in Lot One, Township-12 South, of Range 9 West; thence West 100 feet on the South side of road; thence
 
 *1078
 
 South 50 feet; thence east 100 feet; thence north 50 feet to point of beginning.” (Emphasis ours.)
 

 The pivotal question in the case is whether the foregoing description conveyed any land in Calcasieu Lake which was then •covered by water or whether it embraced •only the high lands adjacent to the shore .as it existed at the time of the execution •of the deed. From 1812 until 1938 or 1939, when the submerged .areas were filled as .a result of the dredging conducted by the Federal Government, the lands bordering ■on Lake Calcasieu had eroded considerably and, in 1931, this court was called upon to •decide, in the case of State v. Erwin, 173 La. 507, 138 So. 84, the ownership of these ■submerged areas. There, the State was contending that the lands, having become part of the bed of the lake by the encroachment of the water, were public property •and that title was, therefore, in the sovereign. The litigants in this case were among the parties defendant in that suit and, in :a joint answer filed by them, it was claimed that ownership was retained by them to .all lands originally acquired under patents from either the State or Federal Government, whether submerged or not, and that the title of the State was confined to the shore line below the high water mark as it •existed in 1812, when Louisiana was admitted to the Union.
 

 The defendants’ position was upheld by the Court in the Erwin case and, .although that decision was subsequently , overruled in Miami Corporation v. State, 1936, 186 La. 784, 173 So. 315, it is res adjudicata insofar as private ownership of the lands in litigation are concerned. Hence, it is established that the original patentee, Burrell Franks, acquired to the meander line of the lakeshore as fixed by the survey of Williams in 1833; that none of that land has been lost to the State by erosion and that the present proprietor has a valid> title thereto. The question is— who is the owner of the land in dispute?
 

 Defendants maintain that the description of the lands set forth in the Doiron-O’Bryan deed is ambiguous inasmuch as the word “shore”, as related to the boundary, does not indicate whether the parties were referring to the shore line of Calcasieu Lake as it existed at the time of the Williams survey in 1833 or at the time of the execution of the deed. They further assert that the conveyance of “all riparian rights belonging to the vendor” is quite indefinite; that, therefore, it is necessary to resort to extrinsic evidence in order to ascertain the true intention of the parties and that an examination of this evidence makes it plain that Michel Doiron conveyed all of the submerged as well as the high lands referred to in the description.
 

 Plaintiffs, on the other hand, profess that the deed is distinct and explicit; that the words “shore” and “riparian rights” have a definite and ordinary meaning and that, by employing the usual and accepted definition of the words, no difficulty at all is
 
 *1080
 
 encountered in determining that O’Bryan bought land to the shore of the lake at the meander line existing as of the date of the contract, and no more.
 
 [1]
 

 At the trial, counsel for plaintiffs objected to the extrinsic evidence offered by defendants for the purpose of exhibiting the intention of the parties dehors the deed itself. This objection was overruled but, on final consideration of the case, the judge, in holding for plaintiffs, stated that he found no uncertainty in the language used in describing the land conveyed and that, therefore, the evidence was inadmissible to show an intent other than that expressed in the instrument.
 
 [2]
 

 The provisions of our Civil Code which deal with .the effect of conventional obligations and specifically with the interpretation of agreements Section 5 of Chapter 3 of Title IV, Book III, Articles 1945 through 1962, are pertinent here. Article 1945 declares in- substance that legal agreements have the effect of law upon the parties; that the courts are bound to give effect to all contracts according to the true intent of the parties and that the intent is to be determined by the words of the contract when they are clear and explicit and lead to no absurd consequences. Article 1946 prescribes that the words of a contract are-to be understood in the common and usual signification without attending so much to-grammatical rules as to general and popular use. Articles 1948 through 1959 provide for the rules of interpretation to be-applied when the words used in the contract make doubtful the intention of the-parties.
 

 A reading of the description of the land sold by Doiron to O’Bryan convinces us that the parties attempted only to depict in detail the high lands, that is-the lands above the water, which were being transferred. Hence, we hold that, by the use of the word “shore”, the parties-were delineating the edge of the high lands, as it then existed, bordering on the-lake. But we are also of the opinion that, the conveyance of “all riparian rights belonging to the vendor herein” included' more than merely the right to use the lake-for fishing or the erection of a bath house or such other natural rights of use arising' by operation of law. A transfer of riparian rights embraces, under our law, whatever right of ownership the grantor had, by previous acquisition or otherwise, to the-bed of the lake which was then covered by
 
 *1082
 
 water.
 
 [3]
 
 The definition of “riparian rights” is not an easy one as the nature of the rights intended to be included depends “largely upon statute and customs of the different jurisdictions.” See Encyclopedia American, 1940 Ed., Vol. 23, page 535. Many varying concepts of “riparian rights” may be found in encyclopedias and dictionaries. See Encyclopedia Brittanica, 14th Ed., Vol. 23, page 428; Words and Phrases, Vol. 37A, page 472; Webster’s Dictionary, 1950 Ed., page 2152; American Jurisprudence, Verbo “Waters”, Vol. 56, Sections 469, 474, 475, 501 and 503. Perhaps the best general definition is contained in Black’s Law Dictionary, 3d Ed., page 1563, viz: “The rights of owners of lands on the banks of -water courses relating to the water, its use, ownership of soil under the stream, accretions, etc.”
 

 Thus, when the conveyance of riparian rights is found in a deed, it would be logical to say that, generally, the grantee acquires not only all of the rights of an adjacent owner in respect of the use of the water but also whatever ownership the grantor had to the submerged land forming part of the bed of the watercourse. And, should this conception be applied to the deed under scrutiny, it would be unnecessary to investigate extrinsic evidence on the question of intention as there is nothing in the conveyance to indicate that Doiron intended to except therefrom any submerged lands connected with the shore which then formed part of the bed of the lake. Indeed, when the bed of an inland water is subject to private ownership, there is a very strong presumption
 
 “
 
 * * * that the grantor intends to convey all the land he owns under the water”. 8 Am. Jur., Verbo “Boundaries”, Section 14, page 754. The rule is stated in 56 Am.Jur., Verbo “Waters”, Section 474, page 889, as follows: “In the case of private grants, the general rule, as noted elsewhere, is that the grantor’s title to the bed of the adjacent waters passes with a grant of the upland, in the absence of any indication of a contrary intention”.
 

 However, since the conveyance of “all. riparian rights” is of such general signification, it may be said that there is some obscurity as to the true intention of the parties in respect of whether title to adjacent submerged lands was to- be transferred. In Louisiana, riparian ownership includes the right of alluvion and dereliction insofar as it is applicable to rivers and streams. Articles 509 -and 510, Civ.Code; Delachaise v. Maginnis, 44 La.Ann. 1043, 11 So. 715. And, under Articles 513-515, riparian proprietors own to the thread of a non-navigable stream. The case at bar, natheless, involves a navigable lake to which these rules of riparian ownership do not apply. Hence, the pertinence of a brief investigation of the extrinsic evidence in
 
 *1084
 
 the instant case in an effort to discover the genuine intent of the parties.
 

 Defendants proved, beyond peradventure, that Felix O’Bryan believed that he had acquired from Doiron title to the land in dispute, that is, that he bought undescribed submerged lands as well as particularly' described high lands — for,. on April 27, 1916 (the day after 'the passage •of the Act) he sent the deed to the Clerk •of Court of Cameron Parish for registration and, in an accompanying letter,
 
 [4]
 
 he stated: “There are only about
 
 51/%
 
 acres ■of high land in the tract, but it is understood that I have acquired all Riparian Rights including what land may have fallen . into the lake.”
 

 Mr. A. M. Mutersbaugh, a surveyor of Lake Charles who was employed to locate the property for Mr. O’Bryan, testified that he surveyed the high land only and that he particularly refrained from making any line measurements from the shoreline to the iron post (the only definite monument) because it was impossible for him to calculate the distance from it to the eroded or submerged lands. His testimony is supported by a plat dated March 20, 1916, showing the location “Of High Land only” containing about 5.77 acres, which is the high land specially described in the deed.
 

 While there is no direct testimony establishing the intention of Michel Doiron, the vendor, considerable documentary evidence was presented to show that, until recently, the plaintiffs did not claim that they were the owners of the disputed submerged lands. These documents consist of deeds which contain declarations that the various appearers owned 67.08 acres in Lot No. 1, i. e.,
 
 Lot
 
 No. 1 less 5.50 acres sold to O’Bryan.
 

 In the case of State v. Erwin, in which the litigants were parties defendant, it was stated in a joint answer filed by them that they were claiming title to the submerged lands there in dispute as shown on a map attached to the answer. An examination of the map reveals that the high land sold to O’Bryan is designated in solid lines, including the then shoreline, and the submerged lands now in dispute were extended by dotted lines from the water’s edge to connect with another dotted line representing the shoreline under the 1833 government survey of Williams.
 
 [5]
 

 
 *1086
 
 While this evidence is of a negative nature, it is sufficient to indicate an implied acquiescence on plaintiff’s part that defendants were the owners of the submerged lands adjoining their property. This is significantly so with respect to the map attached to the joint answer. And, when considered in connection with the positive evidence of O’Bryan that the parties understood that conveyance of “all riparian rights” embraced, the submerged lands, the slight doubts which may exist in the' description contained in the deed are cured completely.
 

 We conclude that, when Doiron conveyed to O’Bryan “all riparian rights”, he transferred all his right, title and interest in and to the submerged lands herein claimed.
 

 The judgment appealed from is reversed and it is now decreed that the deed from Michel Doiron to Felix D. O’Bryan, dated April 26, 1916 and recorded in the conveyance records of Cameron Parish in Book “U” page 551, conveyed to Felix D. O’Bryan land extending to the shoreline of Calcasieu Lake, as it existed in 1812, as established by the 1833 survey of H. T. Williams, United States Surveyor, and that the defendants herein own said land to the shoreline of Calcasieu Lake in undivided proportions of one-half to Mrs. Annie Christina O’Bryan, one-eighth each to Leo Francis O’Bryan, Carl Henry Joseph O’Bryan and Annie Maude Ronstrom, born O’Bryan, wife of George M. Ronstrom and one-sixteenth each to Mary Sibyline Bird and Caroline Regina Bird. And it is further ordered that the lease affecting such lands granted by Mrs. Annie Christina O’Bryan and others to Magnolia Petroleum Company and J. S. Abercrombie Company, and the assignments of said lease, are reinstated. •
 

 Plaintiffs are to pay all costs.
 

 HAWTHORNE, J.; takes no part.
 

 [1]
 

 . Counsel for plaintiff also contend that defendants are, in truth, attempting to reform the deed and that, this being so, the action is prescribed. There is no merit whatever in this proposition as defendants are not attempting to reform the deed; they are merely asserting that the description contained in the deed is vague and that extrinsic evidence is necessary to ascertain the property conveyed thereunder. Snelling v. Adair, 196 La. 624, 199 So. 782.
 

 [2]
 

 . The evidence is clearly receivable if the description in the deed is ambiguous. Snelling v. Adair, 196 La. 624, 199 So. 782 and cases there cited.
 

 [3]
 

 ,. Compare State v. Aucoin, 206 La. 787, 20 So.2d 136, where it was said that riparían rights do not include the bed of a lake,
 
 if the State owns the bed.
 

 [4]
 

 . Plaintiffs’ counsel say that this letter was not receivable in evidence but we find no substance in their objection. O’Bryan is dead and the only way proof of his intention could be shown is either by something he did or said at or near the time the conveyance was executed. His written statement, made at a time unsuspicious, is highly relevant. The case ■of Merritt v. Wright, Williams & Co., 19 La.Ann. 91, cited by counsel, does not support their contention.
 

 [5]
 

 . Counsel for defendants maintain that the answer of plaintiffs in State v. Erwin, supra, and the declarations in the various deeds offered in evidence by them es-top plaintiffs from now contending that . they are the owners of the submerged lands. The plea of estoppel is clearly untenable as defendants do not claim that they were prejudiced by the declarations of plaintiffs. However, the proof is of probative value on the question of the intent of the parties.