GLADNEY, Judge.
Mrs. Fannye Mae Bogart, appellant herein, by this suit seeks injunctive relief to prevent the defendant, John L. Caldwell,. Sr., from operating a competitive motion picture theater in the Town of Farmerville,. Louisiana, allegedly in violation of an obligation not to do so. After trial upon the merits she has appealed to this court from an adverse judgment.
Substantially all of the material facts are admitted, or at least are not seriously disputed.
Appellant is the widow of Harry Dalton Bogart, Jr., who died intestate on October 1, 1951. During the existence of the community between appellant and her late-husband, the latter purchased from defendant the property known as the Strand Theater in Farmerville, paying as consideration therefor $60,000 of which $30,000 was paid in cash and the remainder payable in monthly installments. The act of sale was authentic in form and contained stipulations which gave rise to the issues that must be determined.
*631 Bogart borrowed the cash or down payment from his father, Henry D. Bogart, Sr., and as security for this loan a second mortgage on the property was executed.
From the date of its purchase the Strand Theater has been in continuous operation, first by Bogart, and, after his death by his widow. The entire ownership of said property is presently in appellant, she having acquired the one-half interest that became part of the Henry D. Bogart, Jr. estate by reason of inheritance from her husband and through purchase 'from the decedent’s father and mother of the interest inherited by them, decedent being without issue. Appellant, of course, as a partner of the community with her husband, owned a one-half interest in said theater in her own right after June 30, 1951. On January 30, 1952, after being informed defendant was preparing to commence the operation of a motion picture show business in the Union Theater building in Farmerville, appellant, through her attorney, wrote defendant a letter calling to his attention provisions in the contract between him and her deceased husband, wherein it was agreed Caldwell would not open a motion picture theater in said building, and warning him she would take legal action to prevent him from doing so. The defendant, however, did on March 2, 1952, open and commence the operation of a picture show business in the Union Theater building and the operation thereof by defendant is, we presume, presently continuing. Because of this, this lawsuit was filed.
In her petition appellant alleged that by reason of such competition defendant has caused her serious injury and damage, and the continued operation of such a business will result in future injury and damage by reducing the attendance at the Strand Theater with material reduction in her income and profits; and, further, that unless defendant be restrained she will suffer irreparable injury and damage. Upon trial of the case evidence was adduced disclosing that after Caldwell had re-opened the Union Theater there was a substantial falling-off in the attendance of the Strand Theater.
The defense urged is fully stated in the answer wherein it is urged that the agreement of defendant and Harry Dalton Bogart, Jr. was that defendant’s use of the Union Theater building should be restricted only so long as the said Harry Dalton Bogart, Jr. should himself own the Strand Theater building and that such restrictions should terminate when the said Harry Dalton Bogart, Jr. ceased to own the Strand Theater, whether such cessation of ownership by Harry Dalton Bogart, Jr. was by sale, death or in any other manner. Appellant insists, on the other hand, that Caldwell’s obligation was not one strictly personal, — that it was heritable, and inured to the benefit of the widow and heirs of Harry Dalton Bogart, Jr.
The act of sale between Caldwell and Bogart, bearing date of June 3, 1950, being in the form of an authentic act, unless ambiguous, may not be explained or altered by parol evidence. Articles 2236 and 2276, LSA:Civil Code. Brenard Mfg. Company v. M. Levy, Inc., 1926, 2 La.App. 577, affirmed 161 La. 496, 109 So. 43; Brenard Mfg. Company v. Levy, Inc., (App.1926), 4 La.App. 279, affirmed 161 La. 496, 109 So. 43; Hafner Mfg. Company v. Lieber Lumber & Shingle Co., 1910, 127 La. 348, 53 So. 646; Hartsfield v. Green, La.App., 1952, 62 So.2d 180.
The seller within the terms of the act of sale is bound to explain himself clearly respecting the extent of his obligation and an obscure or ambiguous clause must be construed against him. Article 2474 LSA:Civil Code. Frost-Johnson Lumber Company v. Salling’s Heirs, 150 La. 756, 91 So. 207; Hicks v. Griffith, 10 La.App. 442, 121 So. 328; Krauss v. Fry, 209 La. 250, 24 So.2d 464.
To be found in the act of sale between Bogart and Caldwell are the following provisions :
“The parties hereto agree that this vendor, John L. Caldwell, is the owner of another theater building in the Town of Farmerville, Louisiana, known as the Union Theater, and, as a part of the moving consideration for this sale, *632 it is agreed that this vendor will not open or operate another moving picture show or theater in said building.
“The parties hereto agree that the agreement contained herein with reference to the operation or non-operation of a picture show in the Union Theater building by the vendor herein, shall be binding for so long as this vendee owns the property herein conveyed to him, but shall terminate in the event said vendee sells the property.”
The provisions plainly imply the vendor would not open or operate another motion picture theater in the Union Theater building so long as the vendee should own the property conveyed to him, and that Caldwell’s obligation would terminate in the event the vendee should sell the property. However, the latter proviso is of no consequence since defendant has admitted in his answer Bogart during his lifetime did not sell the Strand Theater. The legal issue is thus narrowed to a resolution of the question whether the death of Bogart resulted in a cessation of his ownership, and the termination of the obligation.
Defendant’s covenant was an obligation not to do. The contract of which the condition forms a part is, like all others, complete by the assent of the parties; the obligee has a right of which the obligor cannot deprive him and its exercise is only suspended, or may be defeated according to the nature of the condition. This right is heritable, if it is not one of those that result from an obligation designated in law as a personal one. Articles 2028, 2029, LSA:Civil Code. An obligation is strictly personal when none but the obligee can enforce its performance, or when it can be enforced only against the obligor. It is presumed to be personal as to the obligee in a contract to do or to give, when that which is to be done or given is exclusively for the personal gratification of obligee, and could produce no benefit to his heirs. Articles 1997, 2201 LSA:Civil Code. The nature and effect of a personal obligation is further explained in Ferguson v. Thomas, 3 Mart., N.S., 75, at pages 80, 81:
“The general rule is that all the obligations of the ancestor pass to his heirs, active as well as passive. The exceptions to this rule are those obligations, which result from agreements,, in which the personal qualities of the person promising are to be supposed the leading motive of the contract, and where the want of them cannot be supplied by any other, or compensated by pecuniary damages. Such is the confidence we repose in our physician,, who assists us in sickness; the painter whom we may desire to make family portraits; and in case of their decease, their heirs cannot demand that they shall be permitted to supply their place or perform their contract. But an engagement to ship cotton may be performed by any one, the qualities of mind are not the leading consideration that induced the contract. Pecuniary responsibility is the moving cause, because the nonperformance can be compensated in damages and no objection can be made to the heirs, on that score, where they are the creditors of the person whose engagement they seek to enforce.”
The heritable obligation is one from which there arises the right of the heirs and assigns of one party to enforce the performance against the heirs of the others. Heritable obligations and stipulations give to and impose upon heirs, assigns and other representatives the same duties and rights that the original parties had and were liable to, except that beneficiary heirs can only be liable to the amount of the succession. Every obligation shall be deemed to be heritable as to both parties, unless the contrary be specially expressed or necessarily implied from the nature of the contract. Articles 1997, 2008, LSA:Civil Code.
Manifestly, the obligation not to operate a competitive picture theater can by no stretching of the imagination be said to exist for the personal gratification of the obligee and it is productive of financial benefit to the heirs of the obligee. It is not the sort of personal obligation that ends with the death of the obligee. It is a heritable obligation the right to which' ■ is enforceable by the heirs of the obligee.
*633 In the confection of the act of sale there was inserted a provision the vendee was purchasing with his separate and para-phernal funds. This statement is refuted by other provisions in the act of sale, that is to say the vendee is declared to be living with his wife, and that half of the consideration was to be paid under terms of •credit. The funds used, therefore, were not obtained from the separate property of Bogart. Counsel for the defendant concede that the property acquired entered the -community of acquets and gains, but they argue that the clause is material as evidence of limitation upon the obligation of Caldwell as existing only for Bogart and not for his wife or his heirs. The argument, we think, is untenable. Though there was a brief separation between appellant •and heir husband prior to the execution of the deed, the inference, is not warranted that he intended to use this means to circumscribe his property rights to the disadvantage of his heirs upon his own death. It is conceivable that the non-operation of ■a rival motion picture show in a town of the •size of Farmerville could make the difference between profit and loss in the operation of the Strand Theater. Caldwell in first offering the Strand Theater for sale to Bogart realized this and himself proposed that if Bogart purchased one of the shows owned by him, he would not keep ■the other open.
The codal provisions heretofore referred •to clearly show the subject obligation was not strictly a personal obligation that ceased upon the death of the obligee, but being a heritable obligation it continued in existence under the ownership of Bogart’s surviving widow.
Where, as in this instance, the obligation be not to do, the obligee may demand the obligor be restrained from doing anything in contravention of it in cases where he proves an attempt to do the act covenanted against.. Article 1929, LSA:Civil Code. Algiers Ry. & Lighting Company v. New Orleans Ry. & Lighting Company, 1915, 137 La. 579, 595, 68 So. 960, 962. In the latter case it was said:
“Plaintiff bases its suit for injunction to prevent the defendant from doing an act which it contends may be injurious to it (plaintiff) or impair a right which it claims. And it argues that the respondent judge had no discretion in the matter, and should have issued a preliminary injunction when applied for by it, and supports its argument by reference to article 1929, C.C., which reads:
“ ‘If the obligation be not to do, the obligee may also demand that the ob-ligor be restrained from doing anything in contravention of it, in cases where he proves an attempt to do the act covenanted against.’
“The foregoing article explicitly states the law with reference to obligations ‘not to do’; that a remedy by injunction will lie; and in the case of Levine v. Michel, 35 La.Ann. 1121 (1127), we hold it to be the legal duty of the obligor to comply with the terms of the contract, and the legal right of the obligee to exact compliance; in other words, the obligee may enforce a contract not to do by specific performance. And that a violation of said contract is injurious to plaintff and impairs a right which he claims, and is therefore a proper subject for injunction, within the very terms of article 296, C.P.”
Plaintiff’s reservation of her right to sue defendant for damages already suffered is proper.
For the foregoing reasons the judgment is in error. It is, therefore, ordered, adjudged and decreed that the judgment from which appealed is avoided, annulled and reversed, and it is ordered that there be judgment in favor of plaintiff, Mrs. Fannye Mae Bogart and against the defendant, John L. Caldwell, Sr., permanently enjoining, restraining and prohibiting said defendant from the further operation of a moving picture show or theater in the Union Theater building located in the Town of Farmerville, Louisiana.
It is further ordered that plaintiff’s right to sue defendant for all, damages suffered by her as a result of defendant’s opening *634 and operation of a picture show in the Union Theater building be reserved.
It is further ordered that defendant, ap-pellee, pay all costs incurred in this suit, including costs of the appeal.