76 So.2d 52 (1954)
Hector H. HAGGARD, Jr., et al., Plaintiffs-Appellants,
v.
Jesse Lamar RUSHING, Defendant-Appellee.
No. 8221.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1954.
Rehearing Denied December 10, 1954.
*53 Albert E. Bryson, Shreveport, for appellants.
Myers, Gatti & Egan, Shreveport, for appellee.
AYRES, Judge.
Plaintiffs, who are the heirs of Hector H. Haggard, Sr., deceased, instituted this action against the defendant for an injunction, restraining, prohibiting and enjoining the defendant from interfering with their building a fence on the property line between their respective properties. Plaintiffs' property was inherited from their deceased father.
The defense is that defendant has the occupancy, possession and right to use a 75 × 840 foot strip of plaintiffs' land contiguous to defendant's property.
On trial of the issues presented, an injunction was issued as prayed for, but recognizing the right of use of said property in the defendant. Plaintiffs appealed from the judgment rendered, and defendant answered the appeal and prayed that the judgment be amended by dissolving the injunction and recognizing defendant's usufruct of the disputed 75 × 840 foot strip of land.
The record reveals that defendant owns a triangular tract of land 144.01 feet wide east and west at the south end and 840.6 feet long north and south, comprising 1.44 acres, immediately west of and adjoining the strip herein involved. Plaintiffs own a tract of 108.45 acres adjoining defendant's property on the east, including the aforesaid strip.
March 26, 1940, defendant purchased from C. L. Bland Co., Inc., the aforesaid strip, together with a continuation thereof northward, for a total length of 2107 feet. This strip was then placed under fence with his other property and was occupied, used and possessed by him as owner. However, at the time he obtained a deed to this property, T. C. Barrett was the owner and on April 27, 1944, he sold it included in a larger tract to Hector H. Haggard, Sr. Concluding that he had no title to the property and that the title was in Haggard, Rushing, in order to avoid litigation and to remove the cloud on Haggard's title resulting from the recordation of his deed, entered into a contract with Haggard, Sr., whereby Rushing quitclaimed to Haggard whatever right, title or interest he had to the property, and in consideration of the quitclaim deed, which was executed January 28, 1947, Haggard authorized and permitted Rushing to use, without cost, the surface of the south 840 feet of said property. From and after this compromise and agreement to the date of Haggard's death about 1950, said property remained under fence with the defendant's property and was possessed, occupied and used by him as his own.
Rushing testified that shortly prior to the senior Haggard's death, Haggard, Jr., discussed with him defendant's right to use the property under his father's agreement and was shown the instrument itself, and that together they located the corner and lines of the strip, and that soon after his father's death Haggard, Jr., built the fence across the north end of the 75-foot strip, 840 feet north of the Greenwood Road, thereby separating the portion, the right over which was claimed by defendant, from plaintiffs' other property. Haggard, Jr., denied seeing the instrument but admitted building the fence. Defendant's use and occupancy of the property continued without interference until October 20, 1953, when Haggard, Jr., attempted to build a fence along the property line so as to include the strip involved under the same fence with the other Haggard property.
*54 After plaintiffs were placed in possession of ther father's property and recognized as the owners thereof by judgment of court, before the instrument or counter letter for Haggard, Sr., to defendant was recorded, H. H. Haggard, Jr., one of plaintiffs, purchased from his co-heirs a 250 foot square lot of the Haggard property, which included the south 250 feet of the 840 foot strip. Defendant's residence is located only 44 feet west of the property in dispute.
Plaintiffs contend that in the aforesaid transaction between their father and Rushing, Rushing received, if anything at all, no more than a right of use of the property, as defined by articles 626 and 633 of the LSA-Civil Code. This contention was upheld by the district court. Defendant contends that his right to use the property was equivalent to or constituted a usufruct.
It may be pointed out that in the agreement Rushing was not granted the "use" but that he was authorized and permitted "to use" said property. What the parties intended is the question presented for our determination. We are bound to give legal effect to all contracts according to the true intent of the parties. Such intent is to be determined by the words of the contract when they are clear and explicit and lead to no absurd consequences. LSA-C.C. art. 1945. The words of a contract are to be understood, in the common and usual signification, without attending so much to grammatical rules, as to general and popular use. LSA-C.C. art. 1946. Where there is a doubt as to the true sense of the words of a contract, they may be explained by reference to other words or phrases in the same contract. LSA-C.C. art. 1948. Also, the true meaning of its terms should be sought by endeavoring to ascertain what was the common intention of the parties. LSA-C.C. art. 1950. Another important rule for the interpretation of contracts is that when the intent of the parties appears doubtful, the manner in which they have executed the contract or where it has been executed by one with the expressed or implied assent of the other furnishes a rule for its interpretation. And in a doubtful case, the agreement should be construed against the obligor. LSA-C.C. art. 1957. See also Gibson v. Zylks, 186 La. 1043, 173 So. 757. In that case, a sale of property was made with a reservation that the vendor was to have the revenue from the property for her support as long as she lived and "to own" it as her home until death, which was held to constitute nothing more than a statement of the Codal provisions governing usufructs.
The words used in the contract now before us, in the light of the interpretation and execution of the agreement by the parties themselves, are also nothing more than a statement of the Codal provisions governing usufruct, which is defined as the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility and advantages which it may produce, provided it be without altering the substance of the thing. LSA-C.C. art. 533.
In this connection, it is noted that for seven years defendant had this property under fence with his other property, occupied and possessed it as owner, and following the agreement between him and Haggard, Sr., the property remained under his fence with his other property, and subject to the agreement, in his occupancy and possession. This status continued without contention to the contrary for three years while Haggard lived and for three year after his death without any controversy with any of his heirs, but with complete acquiescence therein and even with the repair of the fence and the construction of a new fence separating the south 840 foot portion from the remainder. Defendant made use of this property as a part of his home and yard. The proposed fence and contruction would be within 44 feet of his residence. Under the language of this instrument, we think it is clear that the parties intended that the defendant continue "to use" the property in the same manner and to the same extent that he had been at the time of the agreement, which use continued unabated without contention *55 or controversy for six years thereafter. Had a different use been intended, the parties had the opportunity to use and no doubt would have used language clearly expressive of such an intention. It would be a narrow and strained construction to place an interpretation of mere use, that is, the right only to such fruits of the property as may be necessary for his daily wants and those of his family, under LSA-C.C. arts. 626 and 633, which limited use had never been recognized by any of the parties, and permit plaintiffs to construct a fence, obstruct, impede and, in fact, prevent defendant's access to or entry upon the property. There is no showing in the record of any intent of the parties in making the agreement to limit or restrict defendant's use of the property in any manner from the use then being made.
Plaintiffs, claiming they are third parties, contend that the counter letter from their father to the defendant, referred to hereinabove, is not binding upon them, having been recorded long after they came into possession of this property by inheritance and after Haggard, Jr., one of plaintiffs, had acquired a portion of the property by deed from his co-heirs, citing LSA-C.C. art. 2239, to the effect that counter letters have no effect against creditors or bona fide purchasers.
In the case of Porterfield v. Parker, 189 La. 720, 180 So. 498, 499, it appeared that plaintiff's stepfather acquired by homestead a 40-acre tract of land during his marriage to their mother, which he subsequently sold while their mother was living, the deed to which, however, was not recorded until after their mother's death. They alleged that because the deed was not recorded until after their mother's death, it had no effect as to them as third persons, in the sense that the term was used in LSA-C.C. arts. 2246, 2264, 2266 and 2442, which provide that sales or contracts affecting immovable property shall not affect third persons unless recorded as provided by law. As to this the court said:
"There is not merit in the argument. The articles of the Code cited above plainly state that, whereas unrecorded acts conveying immovable property do not affect third persons, they do affect, and are binding upon, the parties to them. Plaintiffs' mother was bound by the deed made by her husband, although unrecorded, up to the moment of her death, and plaintiffs' rights as heirs arose and were fixed at that moment. Plaintiffs are not `third persons,' as that term is used in the Code.
"But, aside from this, article 2442 of the Revised Civil Code says that want of registry cannot be pleaded either by the parties to the acts or by their heirs."
The specific language of this Article is as follows:
"The sale of any immovable made under private signature, shall have effect against the creditors of the parties, and against third persons in general, only from the day such sale was registered according to law, and the actual delivery of the thing sold took place.
"But this defect of registering shall not be pleaded between the parties who shall have contracted in such act, their heirs or assigns, who are as effectually bound by a sale made under private signature, as if it were by an authentic act."
In the case of Green v. McDade, La. App., 17 So.2d 637, 641, the defendants made the identical contention that they were third parties and relied upon the faith of the public records and were not chargeable with notice of secret equities existing between the original parties. That suit involved a deed from the plaintiff to the defendants' ancestor, plaintiff contending that it was his understanding and intent that the instrument was executed as a mortgage. Some of the heirs had transferred interests in the property to their co-heirs, just as was done here by some of the heirs to Haggard, Jr. This court said:
"We are of the opinion that heirs succeed to the rights and liabilities *56 of him from whom they inherit, and, therefore, are chargeable with the effect of error on his part. Consequently, the defendants in this case cannot be considered as bona fide third parties."
Plaintiffs urge an objection made to the introduction of this counter letter in evidence, first, for the reason that it was an attempt to vary the terms of an authenticated instrument, a quitclaim deed, and, second, that the right which it attempts to establish can only be done by a deed, citing LSA-C.C. art. 628. The objection is without merit. The object and purpose of a counter letter is, as the word implies, to controvert the terms of some other instrument. "Counter" has been defined as a prefix signifying opposite, over against, contrary, or antagonistic. LSA-C.C. art. 628 merely provides that the right of use and habitation are established and extinguished in the same manner as usufructs. LSA-C. C. art. 540 provides that usufructs may be established by all sorts of titles: by a deed of sale, by marriage contract, by donation, compromise, exchange, last will, and even by operation of law.
In view of the language employed and the interpretation placed thereon by the parties themselves, and it appearing that precise, technical terms are not necessary to create a usufruct, our conclusion is that it was the intention of Haggard, Sr., and the defendant that the defendant would have the usufruct and, therefore, the right to use the property in question in the manner and to the extent previously enjoyed. Any other conclusion would run counter to the obvious intent and purposes of the parties as expressed in the instruments.
For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed, the injunction dissolved and the writ of injunction recalled and plaintiffs' demands rejected and their suit dismissed at their costs.
It is further ordered, adjudged and decreed that defendant's right to use, without cost, the surface of the south 840 feet of that certain tract and parcel of land described as follows, to wit:
Beginning at a point 1885.63 feet East and 46.9 feet North of the Southwest Corner of Section 22, Township 17 N. R. 16 West, thence run North 2107 feet to the Southwest corner of Lot A of the Greenwood Heights Subdivision, as per map thereof in Conveyance Book 250, page 410, Records of Caddo Parish, Louisiana, thence run East 75 feet; thence run South 2107 feet along the line parallel to the West boundary line of the tract herein conveyed to the Greenwood Road; thence run West 75 feet to the point of beginning, said tract of land being a rectangular plot of ground 75 feet by 2107 feet; all being situated in Caddo Parish Louisiana,
without interference or molestation, or by the building of any fence by plaintiffs enclosing the same, be and the same is hereby recognized and ordered enforced.
Judgment reversed and rendered.