LOTTINGER, Judge.
This is a suit to establish title under Act. No'. 38 of 1908, LSA-R.S. 13:5062, where neither parties are in possession of the following described property, to-wit:
The Northwest Quarter (NW^) of the Northeast Quarter (NEj4)
The Southeast- Quarter (SEt/4) of the Northeast Quarter (NEJ4)
The Northwest Quarter (NW1^.) of the Southeast Quarter (SEJ4)
The Southeast Quarter (SE14) of the Southeast Quarter (SE^4)
The Southeast Quarter (SE^4) of the Northwest Quarter (NWJ4)
The Southeast Quarter (SE^) of the Southwest Quarter (SWJ4)
All in Section 3, Township 12 South, Range 9 East, Southwestern Land District of Louisiana, containing two hundred fifty-three (253) acres, more or less.
The Lower Court rendered judgment recognizing the Defendants as owners of an undivided one-half interest in and to said property and the Plaintiffs as owners of the other undivided one-half interest of said property. The petitioner has taken this appeal.
*162 The evidence shows that H. H. Beckman patented from the State of Louisiana during the year 1900 the East half and the East half of the West half of Section Three in Township No. Twelve South Range No. Nine East in the Southwestern Land District, Parish of Iberia, containing four hundred ninety-six & 08/100 acres. During the year 1922 he sold to Albert F. and Bernard A. Storm a full interest in six alternate forty acre tracts included in the described patented area and retaining the full interest in the remaining six forty acre tracts as is described hereinabove in Plaintiff’s petition.
The facts further show that during the year 1931, H. H. Beckman mortgaged the following described property to Consolidated Companies, Inc. :
“His undivided one-half interest in and to, the East Half of Section Three and the East Half of West one-half of Section Three, Township Twelve South Range Nine East, Louisiana •Meridian, containing about two hundred fifty three (253) acres in the Parish of Iberia, Louisiana.”
The mortgage was foreclosed and sold by the Sheriff of Iberia Parish under the same description as set forth in the act of mortgage. The property was held under the above description by the purchaser until 1950 when the property was sold to the petitioner herein under the following description :
“All of its right, title and interest in and to:
Northwest Quarter (NW1/^ of Northeast Quarter (NE^)
Southeast Quarter (SEi/j,) of Northeast Quarter ('NEj4)
Southeast Quarter (SE)4) of Northwest Quarter (NW%)
Northwest Quarter (MW%) of Southeast Quarter (SE^)
Southeast Quarter (SEt/i) of Southeast Quarter (SEt4)
Southeast Quarter (SE^) of Southwest Quarter (SW%) of Section 3 in Township Twelve (12) South, Range Nine East, situated in the Parish of Iberia, Louisiana, containing 253 acres.”
The petitioner now seeks to be adjudged owner of a full interest of the above mentioned property. The defendants are the children of H. H. Beckman, who mortgaged his “undivided half” and the assigns of said children. The Lower Court overruled an exception of no right or cause of action by defendants and they have abandoned said exception on appeal.
It is now petitioner’s contention that, at the time Beckman granted the mortgage to Consolidated Companies, Inc., he actually owned only one-half of the area of the East half and of the East half of the West half of said section. Petitioner contends that, by mortgaging “his undivided one half interest” of the property, it was Beckman’s intention to actually mortgage his entire interest, which was approximately one-half of the area of the East half and the East half of the West half of Section Three.
The defendants, on the other hand, contend that the act wherein Beckman mortgaged “his undivided one half interest” in the property is clear and free from ambiguity. They therefore say that the Sheriff’s sale to petitioner’s author in title covered only the “Undivided one half” of the property, and have interposed an objection to the introduction of any extrinsic evidence which might go to contradict the clear intent of the act of mortgage. Defendants further contend that this is a suit to try title to real estate and is not a suit to reform a deed or correct an error in a description. They further contend that there is no fraud or error alleged in this suit upon which to predicate the introduction of extrinsic evidence. The defendants further contend that if extrinsic evidence is permitted, it would show that Beckman was of the opinion that the property in question was a portion of the community of acquets and gains which existed between him and his deceased wife, and that, at the time of the mortgage, he believed that he only *163 owned an undivided one-half interest in the property.
It is interesting to note what the Lower Court had to say on this matter and we quote with approval:
“Soon after the trial of the case on its merits got under way the important question it involves arose. That question is whether, or not, introduction of extrinsic evidence to explain a document is permissible. The evidence was offered by plaintiff and the defendants promptly interposed the objection. The court reserved its ruling to pass upon the admissibility of the evidence and permitted its introduction.
“Of course, the introduction of extrinsic evidence to explain written documents is generally not permitted. The reason for the rule is obvious. The exceptions to this general rule are few and are clearly drawn. See Gibson v. Zylks, 186 La. 1043, 173 So. 757.
“In this State our LSA-Civil Code directs us how to proceed in the interpretation of documents. These directions are found in Book III, Title IV, Chapter 3, Section 5 beginning with Article 1945. Most applicable here is Article 1945; the pertinent part of which provides:
“ ‘Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify ■them. Upon this principle- are established the following rules:
« < * * * * * *
“ ‘Third — That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences ;’
“Commenting upon the' provision of this article the Supreme Court in the case of Doiron v. O’Bryan [218 La. 1069], 51 So.2d 628, 631, stated:
“ 'At the trial, counsel for plaintiffs objected to the extrinsic evidence offered by defendants for the purpose of exhibiting the intention of the parties dehors the deed itself. This objection was overruled but, on final consideration of the case, the judge, in holding for plaintiffs, stated that he found no uncertainty in the language used in describing the land conveyed and that, therefore, the evidence was inadmissible to show an intent other than that expressed in the instrument. The provisions of our Civil Code which deal with the effect of conventional obligations .and specifically with the interpretation of agreements Section 5 of Chapter 3 of Title IV, Book III, Articles 1945 through 1962, are pertinent here. Article 1945 declares in substance that legal agreements have the effect of law upon the parties; that the courts are bound to give effect to all contracts according to the true intent of the parties and that the intent is tp be determined by the words of the contract when they are clear and explicit and lead to no absurd consequences. Article 1946 prescribes that the words of a contract are to be understood in the common and usual signification without attending so much to grammatical rules as to general and popu7 lar use. ’ Articles 1948 through 1959 provide for the rules of interpretation to be applied when the words used in the contract make doubtful the intention of the parties.’
“See also Civil Code Articles 2236, 2276; Hafner Mfg. Co. v. Lieber Lumber & Shingle Co., 127 La. 348, 53 So. 646; Gibson v. Zylks, 186 La. 1043, 173 So. 757; Snelling v. Adair, 196 La. 624, 199 So. 782; Courvelle v. Eckart [La.App.], 49 So.2d 658; Hartsfield v. Green [La.App.], 62 So. 2d 180; Bogart v. Caldwell [La.App.], 66 So.2d 629.
“Here, plaintiff claims that the following provision is ambiguous.
“ ‘His undivided one half interest in and to, The East half of Section Three (3) and the East half of the West one *164 half of Section Three (3) Township Twelve (12) S. R. Nine (9) East, Louisiana Meridian, containing about Two Hundred and Fifty three acres (253 A) in the Parish of Iberia, La.’
“This description appears in an act of conventional mortgage dated August 7, 1931 granted by Hans H. Beckman to Consolidated Companies, Inc. and of record at Mortgage Book A-69, folio 558, tinder entry No. 33143 and in the sheriff’s sale had July 2, 1932 upon the foreclosure of the mortgage recorded in Conveyance Book 118, folio 215, under entry No. 46754, all of the records of Iberia Parish, Louisiana. Both acts are links in plaintiff’s title.
“By this description, plaintiff claims that Beckman divested himself of all the property he owned in Section 3.
“Pursuing its contention, and subject to defendants’ objection,, it produced evidence to show that Hans H. Beckman patented from the State of Louisiana on January 30, 1900 the East half and the East half of the West half of the Section Three in controversy, and that in June, 1922 he sold to Albert F. and Bernard A. Storm lands which approximate one-half of the area he had acquired. In his sale to the Storms, Beckman subdivided the section into its quarter-quarter portions, of which there were twelve, and he sold six of them. The six quarter-quarter sections that Beckman sold alternated in location with the six he kept, that is, for each subdivision he sold he retained the adjoining one.
“Plaintiff points out, therefore, that at the time Beckman granted the conventional mortgage he actually owned only one-half of the area of the East half and of the East half of the West half of the section. By mortgaging ‘his undivided one half interest’ -of the property, it was his intention to actually mortgage his entire interest.
“On the other hand, and to counter this supposition, the defendants, call attention to the fact that Beckman had two children, both of whom are defendants in this suit, and that his wife had died. Beckman’s wife died several years before he patented the property from the State. It is apparent that he was under the impression that his children owned an undivided one-half interest in his property, because their mother was dead. This fact is evident, defendants claim, because the children appeared with their father in a number of recorded transactions involving his property.
“Being under this impression, therefore, it is defendants’ theory that when Beckman mortgaged ‘his undivided one half interest’ he intended to actually mortgage only one-half of his interest because he supposed that his two children owned the other half.
“Beckman died subsequent to.the execution of the mortgage and prior to its foreclosure leaving us- with the description in the act of mortgage as mute testimonial of what he actually intended.
“The ■ extrinsic evidence, however, should not be considered unless we first conclude that the description of the property recited in the act of conventional mortgage is ambiguous.
“When we study the description rather closely we must conclude that it is the extrinsic evidence which makes it ambiguous and not the description itself. Standing alone we find that Beckman mortgaged ‘his undivided one half interest in and to, The East Half * * * and the East half of the West one half of Section Three (3)’. That provision is plain and the One generally employed to indicate that it is only the half interest to property that is covered by the term. After all, ‘his undivided one half interest’ can hardly be construed to mean ‘his whole interest,’ or any other interest but the undivided .one-half- of whatever interest the trans-ferrer owns.
*165 “Article 1946 of the LSA-Civil Code directs us to give to the words of a contract their common and usual signification. It provides:
“ ‘The words of a contract are to be understood, like those of a law, in the common and usual signification, without attending so much to grammatical rules, as to general and popular use.’
“Obviously, therefore, there is no ambiguity in the description. Hence, it follows that no evidence was admissible to change the common everyday meaning imparted by the description. The objection of the defendants to the introduction of such evidence should therefore be maintained.
“ Plaintiff strenuously argues that by their acts it is obvious that for several years after Beckman’s death the defendants were under the impression that the decedent had parted with all of his property in Section 3. The evidence points to that fact, but it should have been excluded. Their conduct cannot possibly divest them of their title.
“In the case of Snelling v. Adair [196 La. 624], 199 So. [782], 786, cited supra, our Supreme Court aptly pointed out:
“ ‘The pleas of estoppel, ratification, and acquiescence, which are based on the long silence and inaction of the plaintiff and her ancestor, are equally unimpressive, for one can never be divested of his title to property except in the manner prescribed by law. Pearce v. Ford, 124 La. 851, 50 So. 771; Long v. Chailan, 187 La. 507, 175 So. 42; and Gibson v. Pickens, 187 La. 860, 175 So. 600.’
“Accordingly, let there be judgment recognizing the plaintiff to be the owner of the undivided one-half interest of the property described in its petition, and the defendants to be the owners of the other undivided one-half interest thereof in the proportions set out in their titles, at plaintiff’s costs.”
Article 1946 of> the LSA-Civil Code' directs us to give the common and usual significance to the words of a written contract. Said article states:
“The words of a contract are to be understood, like those of a law, in the common and usual signification, without attending so much to grammatical rules, as to general and popular use.”
Following the clear wording of the above quoted codal article, we are of the opinion that the wording of the act of mortgage could mean but one thing. It is clear that Beckman meant and intended to mortgage only an undivided one-half interest in the property he owned at the time of the mortgage. To hold otherwise would require us to entirely overlook the words ‘undivided one half.’
In Sabatier v. Bowie Lumber Co., 129 La. 658, 56 So. 628, 629, a question arose as to whether a vendor had sold the full interest in a tract of land,- or only a one-sixth-interest therein. In- that case the Court said:
“The -first question to be considered is whether Eugene Sabatier sold to Firmin Thibodaux the whole tract of land, or only an undivided sixth interest therein. It is admitted that, at the date of said conveyance, Eugene Saba-tier was owner of the entire tract.
“On September 30, 1895, Eugene Sabatier sold to Firmin J. Thibodaux the following described property, to-, wit :
“ ‘The undivided one-sixth of a certain tract of land, situated in this parish, on the left bank of Bayou Lafourche, at about fifteen miles below the town of Thibodaux, and at forty arpents from the bayou, being the rear or double concession of the tract formerly' belonging to J. B. Guedry. The tract of land'presently sold being- the number twenty-three (23) on the plan- ■ of Bougerol,. deputy surveyor of the United States, and originally deposited in the office of T. H.-Seghers, notary public of New Orleans, and -being *166 known as plan number, forty-two (42). This land was bought by G. Sabatier from the city of New Orleans, by act before C. E. Fortier on the first of February, 1860. The present vendor sells all of his rights, titles, and interest in the same, being the one undivided one-sixth of said property.’
“The argument of counsel for defendant that the whole tract was conveyed is based entirely on the last paragraph above quoted. If that Vas all the description of the interest conveyed, the authorities cited in behalf of the defendant would be applicable. But, taking the description as a whole, we find that the vendor conveyed specifically ‘the one undivided one-sixth of the tract,’ and the subsequent recital is a mere declaration that the interest so conveyed represented the vendor’s entire right, title, and interest in the property.”
In that case, the Court held that only an undivided one-sixth interest in the property was conveyed by the deed and rendered judgment accordingly. The Court held similarly in Snelling v. Adair, 196 La. 624, 199 So. 782.
As the description in the deed is clear and explicit, and free from ambiguity, we hold, as did the Lower Court, that no extrinsic evidence is admissible to contradict the clear intent of the act of mortgage. See Doiron v. O’Bryan, 218 La. 1069, 51 So.2d 628; Hartsfield v. Green, La.App., 62 So.2d 180; Bogart v. Caldwell, La.App., 66 So.2d 629.
In a petitory action, as well as in a suit brought under Act 38 of 1908, the petitioner must base his action on the strength of his own title, and not on the weakness of his adversary’s title. Dugas v. Powell, 197 La. 409, 1 So.2d 677. This petitioner has failed to do. The evidence clearly discloses that the mortgage of Beckman, and the resulting Sheriff’s sale was for only “his undivided one half interest” in and unto the property of mortgagor. The wording of the act of mortgage is clear and explicit, and no extrinsic evidence will be admitted to change the meaning of said act.
For the reasons assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by the petitioner.
Judgment affirmed.
Rehearing denied.
TATE, J., recused.
CAVANAUGH, Judge ad hoc by appointment.