TATE, Judge.
The Collector of Revenue appeals from judgment ordering the refund of certain State sales taxes paid under .protest which plaintiff sued to recover as provided by LSA-R.S. 47:1576.
Broadly stated, the issue herein is whether “leases for re-leasing” are exempt from the two per cent lease and rental tax feature of the Louisiana Sales Tax, LSA-R.S. 47:301 et seq., see Section 302, subd. B; as, specifically, are “sales for re-sale” from the sales tax provisions thereof, LSA-R.S. 47:302, subd. A, 301(10).
The plaintiff taxpayer further contends that a legal relationship characterized by the Collector as a “lease for re-leasing” by the taxpayer is, in reality, a brokership or agency relationship whereby the taxpayer secures equipment owned by a third party for use (lease) by its own customer; that instead of itself leasing the third parties’ equipment and then re-leasing it to its customer, as contended by the Collector, the taxpayer is in reality an intermediary through whom a lease is made between the third party and the taxpayer’s customer, and that hence instead of two leases (i. e., two taxable events), there is only one lease of the equipment.
Thus, taxpayer argues, only one lease and rental tax is due for the use of the equipment, i. e., that upon the proceeds paid by the ultimate consumer (taxpayer’s customer) ; and not, as the Collector contends, an additional tax also due by taxpayer upon the consideration paid by it to the third party supplier from whom the taxpayer procures the equipment for the lease to its customers.
The court below based its finding of non-liability for the tax primarily on the ground that there existed a principal and agent relationship between the taxpayer and its customers in such transactions involving the- procurement by plaintiff of the equipment of other companies for the use by plaintiff’s customers.
The evidence shows that taxpayer is engaged in the business of renting oil field equipment, such as drilling pipe, to oil companies and drilling contractors. The taxpayer and the other rental companies do not maintain stocks of drill pipe and other equipment sufficient to satisfy their maximum need. Consequently there is a reciprocal arrangement among them whereby other rental companies will furnish equipment needed by another rental company deficient in the supply thereof to fulfill a specific order thereof by the latter’s customers.
Thus, the equipment rented by taxpayer to its customers is either (a) owned by it, or (b) procured by it from other rental companies.
Customarily, the standard charges for the gross equipment furnished on an order are billed by the rental company initially receiving the order to its own customer (including all equipment furnished per the order, both that owned by it and that procured by it from or through other rental companies). As between the two rental companies, the procuring rental company is billed at the standard rental price, less ten per cent, by the rental company furnishing the equipment. The ten per cent commission is the compensation received by the rental company with whom the order originated for its part in the transaction.
Plaintiff’s president described the transactions and the reasons therefor as follows :
*706 At Tr. 5—
“Well when an oil company or a drilling company calls us and gives us an order for a certain amount of equipment [for example, for 10,000 feet of drill pipe], and we do not have the full amount of this in stock at this particular time and we inform the oil company or contractor that calls us that we do not have all the equipment [but, e. g., only 6000 feet] in the yard at this particular time, so they in turn tell us ‘Well you can get it,’ and we say ‘Yes, we can get it,’ so we call around the other rental companies and secure what we need [that is, the other 4000 feet] from them to finish out the order.”
At Tr. 6—
“Q. Now on invoicing this oil company or drilling contractor having the work, or having the job to be done, how many invoices are submitted to the oil company or the drilling contractor? A. One.
“Q. Now why do you submit only one invoice [including the rental for both its own equipment and the procured equipment]. A. Well they [the drilling companies] don’t like to have a whole bunch of invoices coming in there. It simplifies their work, and we are a service company, and they look to us to get the equipment out there and in order to stay in business we’ve got to come up with it or turn the job down, one or the other.
“Q. Now in that way, sir, only one invoice is submitted, is that correct? A. That’s right.”
And at Tr. 8—
“Q. Now, once this oil company or drilling contractor calls you to do a particular job or service a particular job, as the case might be, are they dependent upon you and hold you responsible to see that all of this stuff is gotten to the job site? A. Yes, I am the only one they depend on.
“Q. Now, is it my understanding that their main interest is in having the pipe there when they need it, is that correct, or the equipment there? A. Good equipment service is all they want, and to be certain to have it there on time.”
The liability of plaintiff’s customers for the two per cent tax upon the gross amount of equipment rented by them is undisputed. (Under the Sales Tax Act, the basic liability for the tax is put upon the customer or user, although the “dealer” as statutorily defined is responsible for the collection thereof from the customer, LSA-R.S. 47:303, 304.) What is disputed is the plaintiff’s primary liability as an alleged “customer” itself (i. e., of the other rental company supplying the equipment) for said tax upon the gross proceeds (i. e., 90% of the standard rental price) paid by it to the other rental company arising out of the use of the latter’s equipment by plaintiff’s customers.
The tax involved is levied “at the rate of two per centum (2%) of the gross proceeds derived from the lease or rental of tangible personal property, as defined herein, where the lease or rental of such property is an established business, or part of an established business, or the same is incidental or germane to the said business,” LSA-R.S. 47:302, subd. B(l).
Under its definitions, the Sales Tax Act provides at LSA-R.S. 47:301(7) that:
“ ‘Lease or rental’ means the leasing or renting of tangible personal property and the possession or use thereof by the lessee or rentee, for a consideration, without transfer of the title of such property.”
Plaintiff urges that rather than being a lessor in the lease of the procured equipment to its customer, it is a broker under Art. 3016, LSA-Civil Code, that is, one *707 “who is employed to negotiate a matter between two parties, and who, for that reason, is considered as the mandatory of both.”
Despite the persuasiveness of able counsel for plaintiff, we are unable to agree that the plaintiff taxpayer is merely the agent or intermediary in the leasing of equipment procured from other rental companies for its own customers.
The customer looks only to taxpayer for such equipment and pays the rental only to it; the other rental company supplying the procured equipment looks only to taxpayer for the rental due for the procured equipment.
The drillers deal solely with the original rental company, which bills them for all equipment rented and the sales tax due by them thereon and collects for lost pipe. The rental company pays other rental companies for the equipment procured from them, and it (not the ultimate customer) is responsible to the owner for any equipment lost or damaged in transit. Drillers simply place one order for which only one pay voucher is issued, that is, to the only rental company with which they deal.
We think the Collector correctly contends that in such transactions there is not simply one rental contract, but instead two: (1) the leasing by the taxpayer of the equipment from the other rental company, for a rental of 90% of the standard price; and (2) the re-leasing of the equipment so ordered by taxpayer to its customer at the standard price. Thus, unless the statute can be construed as exempting “leases for re-leasing”, there is a sales tax due upon the first transaction as well as upon the second.
Pointing out that the statutory definition of “lease or rental”, LSA-R.S. 47:301(7) above set forth in full, requires “possession or use” by the "leasee or rentee”, counsel argues that only the ultimate customer physically possesses or uses the procured equipment, and never the taxpayer; therefore, it is urged, taxpayer could not be a lessee, nor could there be a lease or rental within the meaning of the statute.
This argument overlooks that the taxpayer is possessing the procured equipment through its own customer-lessee to whom it is re-rented, Article 3443, LSA-C.C.; and is probably also “using” it within the meaning of the statute by exercising direction and control as to its use, an incident of limited ownership of an interest in the property, see 30 Words and Phrases, Owned, p. 599, Owner, p. 604, Ownership, p. 680, and Owning, p. 691; cf., Gibson v. Zylks, 186 La. 1043, 173 So. 757 syllabus 2, pages 759-760.
The taxpayer suggests that by analogy rents for re-rentals should be excluded from the incidence of the tax since, in keeping with the basic purpose of a sales tax to fall only upon ultimate consumption, the statute specifically exempts sales for re-sale, LSA-R.S. 47:301 (10). To the contrary, seemingly applicable is the principle of statutory construction expressed by the maxim, “Expressio unius est exclusio alteráis” (the specific mention of one exemption implies the exclusion of others). See State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656; McCaffrey, Statutory Construction (1953) 50, Section 17.
By House Bill 297, passed by the 1956 Legislature but vetoed by the Governor, an attempt was made to exclude from taxable transactions leases and rentals of tangible personal property such as those presently at issue involving the lease thereof for subleasing or re-rental. From this circumstance the State and the taxpayer attempt to draw opposing inferences, but, as we recently remarked, “whether an amend-atory act passed soon after controversy arises as to the legislative intention expresses, on the one hand, a change in the previous statute or, on the other hand, a clarifying interpretation of the original intent; depends not upon an automatic presumption either way but upon ‘a recourse *708 to other pertinent indicia of legislative intent,’ p. 158 [McCaffrey, Statutory Construction], such as a legislative expression of the purpose of the amendatory act”, Cranford v. City of Lake Charles, La.App. 1 Cir., 92 So.2d 141, at page 143.
For the above and foregoing reasons, the judgment of the District Court ordering a refund of the protested taxes is reversed and plaintiff’s suit is dismissed at its cost.
Reversed; suit dismissed.